**AMERICAN EXPORT LINES**
169 FRELINGHUYSEN AVENUE
NEWARK, NJ 07114
TEL: 973-824-2333

BOOKING NO.
102279

**CONSIGNEE**
OLABISI FATUROTI SALIS
C/O FORECAST AUTOS 58
SOMOLU, LAGOS NIGERIA

Shippers Ref: 208878
FORWARDING AGENT, FMC NO.   F.M.C.: 00000
NO FORWARDER USED ON THIS B/L

**NOTIFY**
SAME AS CONSIGNEE

ALSO NOTIFY — ROUTING & INSTRUCTIONS
USED UNITS-VARIOUS EXCEPTIONS
AS PER SURVEY REPORT

CARRIER NOT RESPONSIBLE IF
PERSONAL EFFECTS PRESENT

**EXPORTING VESSEL**            **PORT OF LOADING**
MORNING DEW    3              NEW YORK

**PORT OF DISCHARGE**
LAGOS PORT COMPLEX

FREIGHT PRE-PAID

1 2006 SUNNYBROOK TT
DIMS: 412 X 100 X 132
AES: 223226283
XTN: AES-208878
V.I.N.: 4UBAS0R2361D73648

GROSS WEIGHT: 16000LB (7258)
MEASUREMENT: 3147CF (89.11)

deliver to JACOB
CLEAMAR FREIGHT LTD

ON BOARD: 05/19/06   SIGNATURE:

JERICHO, NEW YORK
UNITED STATES

Höegh Autoliners Inc.
As Agents for Höegh Autoliners A/S, Carrier

FREIGHT PREPAID

05/19/06    B/L No. 133

**ORIGINAL**

Hoegh Autoliners AS Bill of Lading

1. DEFINITIONS. «Merchant» includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to the possession of the cargo, and anyone acting on behalf of any such person(s). «Carrier» is Hoegh Autoliners AS of Oslo, Norway (Enterprise No 933099628)

2. PARAMOUNT CLAUSE

   A) The rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading, signed in Brussels on 25th August 1924 (hereinafter the «Hague Rules») as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipment to which no such enactments are compulsorily applicable, the terms of the said convention shall apply.

   B) In trades where the Hague Rules as amended by the Protocol signed in Brussels on 23rd February 1968 (hereinafter the «Hague - Visby Rules») apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in charge of another carrier, and to deck cargo.

   C) Notwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from the United States, this Bill of Lading shall have effect subject only to the provisions of the United States Carriage of Goods by Sea Act, approved April 16, 1936 (hereinafter the «US COGSA»), which shall supersede all other acts, statutes, conventions and treaties and which shall, alone, be deemed incorporated herein.

   D) Notwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from Canada, this Bill of Lading shall have effect subject only to the provisions of the Canada Marine Liability Act, 2001 (hereinafter the «Canada Marine Liability Act»), which shall supersede all other acts, statutes, conventions and treaties and which shall, alone, be deemed incorporated herein.

3. JURISDICTION AND GOVERNING LAW. Any claim or dispute arising under or in connection with this Bill of Lading (whether in contract, tort or otherwise) shall be referred to and decided by Oslo City Court, Norway, and, if any appeals are taken, by the appellate courts of Norway and shall be governed by Norwegian law, except as provided elsewhere in this Bill of Lading.

4. PERIOD OF RESPONSIBILITY. The Carrier or its agent shall not be liable for loss of, damage to or delay of the goods during the period before loading and after discharge from the vessel, howsoever, or in whatsoever manner such loss, damage or delay arises.

5. INDIRECT DAMAGE, DELAY AND MISDELIVERY, TIME BAR.

   A) The Carrier shall in no circumstances be responsible for indirect or consequential loss or damage caused through misdelivery, delay or physical loss of or damage to the goods.

   B) Any claim for delivery of the goods to the wrong person, shall be subject to a time limitation of one year from the date of delivery.

6. THE SCOPE OF VOYAGE. The intended voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose including maintenance or repair of the vessel and/or illness, injury, training or replacement of any members of the crew.

7. SUBSTITUTION AND TRANSHIPMENT.

   A) The Carrier shall be entitled but not obliged to substitute any vessel or other means of transport and to subcontract on any terms which are reasonable in the circumstances the whole or any part of the carriage and the duties undertaken by the Carrier in relation to the goods.

   B) If the Carrier substitutes another vessel or means of transport for the goods, the Carrier's responsibility shall be limited to the part of the transport performed in its own vessel and the Carrier shall not be liable in respect of other parts of the transport even if all freight has been collected by it.

   C) The Carriage by any transhipping or forwarding Carrier and all transshipment or forwarding shall be subject to the terms of the regular form of the Bill of Lading, Freight Note or other Contract or Shipping document used at the time by such transshipping or forwarding Carrier, whether issued for the goods or not, and even though such terms may be less favourable to the Merchant than the terms of this Bill of Lading. If it be claimed that the Carrier is responsible for the cargo during such transshipment or forwarding, the Carrier's responsibility will, and shall not exceed the following:

      (1) if by road, in accordance with the Convention on the International Carriage of Goods by Road (CMR), dated May 19, 1956.

      (2) If by rail, in accordance with the Convention concerning International Carriage by Rail (COTIF), dated May 9, 1980, and Carrier's responsibility shall be contingent upon it be proved that loss of or damage to the goods were caused through the negligent acts or omissions by the Carrier or any of its servants.

   D) With respect to overland transportation in the USA, the terms and conditions of the Uniform I.C.C. Bill of Lading, where applicable, shall also apply together with the underlying Carrier's tariff, which shall be deemed to be incorporated herein as if set forth at length. The liability of the Carrier for losses occurring during land transport shall under no circumstances be greater than that of such underlying carrier.

8. OPTIONAL STOWAGE UNITIZATION

   A) Goods may be stowed by the Carrier as and when received.

   B) Any containers, whether stowed by the Carrier or received by it in a stowed condition from the Merchant, may be carried on or under deck without notice to the Merchant.

9. LIABILITY FOR DECK CARGO. Deck cargo shall be carried subject to all permissible exceptions under the Hague Rules, the Hague - Visby Rules, US COGSA and/or Canada Marine Liability Act as may be applicable under Clause 2.

10. NOTICE OF LOSS OR DAMAGE. LIMITATION OF ACTIONS. Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge (or place of delivery as applicable) before or at the time of the removal of the goods into the custody of the person entitled to deliver thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in this Bill of Lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery.

    Notice of any loss or damage shall be addressed to Carrier's local agent at port of discharge and to Carrier's general U.S. agents, Hoegh Autoliners Inc., 500 N. Broadway, Jericho, New York 11753, U.S.A., Fax No. (+1) 516-935-2504.

11. UNIT LIMITATION OF RESPONSIBILITY. One vehicle shall be considered one freight unit. If goods are shipped in a container, such container shall be considered one freight unit.

    Neither the Carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $ 500 lawful money of the United States of America per package (unit), or in case of goods not shipped in packages per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the Shipper before shipment and inserted in the Bill of Lading. This declaration, if embodied in the Bill of Lading, shall be prima facie evidence, but shall not be conclusive on the Carrier.

    By agreement between the Carrier, Master or agent of the Carrier and the shipper, another maximum amount than that mentioned in the preceding paragraph may be fixed, PROVIDED, that such maximum shall not be less than the figure above named. In no event shall the Carrier be liable for more than the amount of damage actually sustained. Neither the Carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the Bill of Lading.

12. LIABILITY OF SERVANTS, AGENTS AND SUB-CONTRACTORS OF THE CARRIER.

    It is hereby expressly agreed that no servant, agent or sub-contractor of the Carrier, shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under the contract of carriage evidenced by this Bill of Lading for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his or their part while acting in the course of or in connection with his or their employment.

    The Merchant undertakes that no claim shall be made against any servant, agent or sub-contractor of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.

13. HIMALAYA CLAUSE. DEFINES THE LIMITS OF LIABILITY FOR THE CARRIER, SERVANTS, AGENTS AND SUB-CONTRACTORS OF THE CARRIER.

    Without prejudice to the generality of the foregoing provisions, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled shall also be available and shall extend to protect every such servant, agent or sub-contractor of the Carrier acting as aforesaid.

    For the purpose of the foregoing provision of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants, agents or sub-contractors from time to time and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.

The terms «agents», «servants» and «sub-contractor» shall include independent agents, servants and sub-contractors and shall include agents, servants and sub-contractors employed both directly and indirectly by the Carrier and shall also include the agents, servants or sub-contractors of such sub-agents and sub-contractors. It is hereby expressly agreed that vessels owned or chartered, vessels not owned by Carrier, bareboat charterers (in case vessel not bareboat chartered by Carrier), technical and commercial managers, employment agencies, Master and crew that performs any of the Carrier's obligations under this Bill of Lading shall be regarded as sub-contractors of the Carrier.

14. GOVERNMENT DIRECTIONS, WAR, EPIDEMICS, ICE, STRIKES, ETC.

    A) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.

    B) Should it appear that the performance of the transport would expose the vessel or any goods onboard to the risk of seizure or damage or delay, resulting from war, war like operations, blockades, riots, civil commotions or piracy, or any person onboard to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.

    C) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lock-outs, any of which onboard or on shore, or difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and leaving again, all of which safely and without delay, the Master may discharge the cargo at port of loading or any other safe and convenient port.

    D) The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfillment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight if any and a reasonable compensation for any extra services rendered to the goods.

    E) If any situation referred to in this clause may be anticipated, or if for any such reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract before the Bill of Lading is issued.

    F) The Merchant shall be informed if possible.

    G) If at any time upon or after the commencement of the voyage, in the sole opinion of the Master and/or Carrier, it is impracticable, impossible, unsafe and/or dangerous for the vessel, her officers and crew and/or cargo to call at port(s) of discharge through the Suez or Panama canal(s) or Strait of Hormuz due to closure or threatened closure to navigation by any authority exercising legal or illegal control over the area of the canal/strait, the Carrier shall not be liable to proceed further on the voyage by any other route(s) available to navigation and shall be entitled in any of the above cases at its sole discretion to act according to the principles laid down in (B) above.

    If the vessel is being trapped in the Suez/Panama canal(s) or in the Arabian Gulf due to the closure of the Strait of Hormuz or in other navigable waters in connection with the voyage and such trapping lasts for 16 days or more from the moment the vessel is being trapped, the voyage shall be regarded as frustrated and the cargo to be deemed to have been placed under the Merchant's custody and the Carrier/Vessel to be under no further responsibility whatsoever for the cargo (if possible the Carrier shall endeavour to discharge the cargo at the nearest available port according to the principles laid down in (B) above.

15. LOADING, DISCHARGING AND STORING. Loading, discharging and delivery of the cargo shall be arranged by the Carrier's agent, unless otherwise agreed. Storing and delivery shall be for the Merchant's account. Loading and discharging may commence without previous notice. The Merchant at his Assign shall tender the goods when the vessel is ready to load and as fast as the vessel can receive and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the vessel may leave the port without further notice and deadfreight to be paid. The Merchant at his Assign shall take delivery of the goods and continue to receive the goods as fast as the vessel can deliver and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom at the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge to be deemed a true fulfillment of the contract. If the goods are not applied within a reasonable time, the Carrier may sell the same privately or by auction. The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the cargo as above. The Merchant shall be under the obligation to take delivery of damaged cargo and shall accept his reasonable proportion of unidentified loose cargo.

16. LIGHTERAGE. Any lightering in or off ports of loading or ports of discharge to be for the account of the Merchant.

17. FREIGHT AND CHARGES.

    A) Prepayable freight, whether actually paid or not, shall be considered as fully earned upon loading and non-returnable in any event. The Carrier's claim for any charges under this contract shall be considered definitely due in like manner as soon as the charges have been incurred. Interest of 10 per cent, shall run from the date when freight and charges are due.

    B) The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighting onboard and expenses incurred in repairing damages to and replacing of packing due to expected causes and for all expenses caused by extra handling of the cargo for the aforementioned reasons.

    C) Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the vessel shall be paid by the Merchant. If paid by the Carrier, any such charge shall be refunded by the Merchant.

    D) The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through non-observance of Custom house and/or import or export regulations.

    E) The Carrier is entitled in case of incorrect declaration of content, weights, measurements or value of the goods to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the contents inspected and the weight/measurement or value verified.

    F) Full freight shall be paid on damaged or unsound goods.

    G) Goods once shipped cannot be taken back except upon Carrier's consent and payment of full freight and any extra expenses.

    H) If the currency in which freight and charges are quoted is devalued between the date of freight agreement and the date of actual payment, then the amount payable shall be increased in proportion.

18. LIEN. The Carrier shall have a lien on the goods for any amount due under this contract and cost of recovering same and shall be entitled to sell the goods privately or by auction to cover any claims. The Carrier's lien shall continue notwithstanding delivery of the goods.

19. GENERAL AVERAGE. General Average shall be settled according to York - Antwerp Rules of 1994 and be adjusted at any port or place by one or more General Average adjuster(s) in the Carrier's choice. The Merchant shall contribute and/or receive contributions in General Average for all goods shipped under this Bill of Lading The Merchant shall be personally liable in respect of collection whether or not Average bond or other security has been demanded. Such security, including a cash deposit in the Carrier's choice, sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be submitted to the Carrier prior to delivery of the goods.

20. GENERAL AVERAGE – BELGIUM'S COMMERCIAL CODE
    The Merchant by accepting this Bill of Lading expressly waives and renounces Part II Article 148 of the Belgium Commercial Code and agrees that damage to and expenses and sacrifices incurred by the vessel even if caused by the inherent vice or unseaworthiness of the vessel, or by fault or neglect of the Master or Crew, shall be considered as matters of General Average and shall be contributed to by Merchant accordingly.

21. NEW JASON CLAUSE AND BOTH TO BLAME COLLISION CLAUSE
    New Jason Clause and Both to Blame Collision Clause as adopted by the Baltic and International Maritime Conference are hereby incorporated herein and shall remain in effect even if unenforceable in the United States of America.

22. FIRE. Neither the Carrier nor its terminal operator, stevedore, servant or agent, shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading or after discharge from the vessel, by reason or by means of any fire whatsoever, unless such fire shall be caused by their personal design or neglect.

23. The terms of this Bill of Lading shall be separable and if any provision hereof or any part of any provision be held to be invalid or unenforceable, such holding shall not affect the validity or enforceability of any other provision or part thereof in this Bill of Lading.