UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
OLABISI SALIS,                                                     07 CIV 5949 (VM)


                          Plaintiff,


          -against-


AMERICAN EXPORT LINES and
HOEGH AUTOLINERS INC.,


                          Defendants.

----------------------------------------X




**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION**




Garth S. Wolfson (GW 7700)

      Of Counsel




**MAHONEY & KEANE, LLP
Attorneys for Defendant
HOEGH AUTOLINERS INC.
111 Broadway, Tenth Floor
New York, New York 10006
(212) 385-1422**

# TABLE OF CONTENTS

*Page*

STATEMENT OF FACTS.................................................1

ARGUMENT..........................................................1

PRELIMINARY STATEMENT.............................................1

POINT I.    THE CLAIMS AGAINST HOEGH SHOULD BE
            DISMISSED PURSUANT TO THE BILL OF
            LADING'S NORWAY FORUM-SELECTION CLAUSE...........3

POINT II.   HOEGH AUTOLINERS INC. IS NOT A CARRIER
            SUBJECT TO LIABILITY FOR THE LOSS
            ALLEGED........................................11

POINT III.  HOEGH CAN NOT BE HELD RESPONSIBLE FOR
            PLAINTIFF'S FAILURE TO PROVIDE THE
            CUSTOMS DOCUMENTATION WHICH CAUSED THE
            LOSS...........................................12

POINT IV.   IN THE ALTERNATIVE, PLAINTIFF'S DAMAGES,
            IF ANY, SHOULD BE LIMITED TO $500
            PURSUANT TO THE COGSA PACKAGE LIMITATION.......15

CONCLUSION.......................................................18

## STATEMENT OF FACTS

For an accurate statement of the pertinent facts established in this matter, the Court is respectfully referred to the Declaration of Barbara Lauth filed herewith.

## ARGUMENT

**PRELIMINARY STATEMENT.**

The Court enjoys subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1333. Plaintiff's claim falls under the Court's admiralty and maritime jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, and the federal maritime law governs this action. Norfolk S. Ry. Co. v. Kirby, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 1995 A.M.C. 913 (1995).

The provisions of the United States Carriage of Goods by Sea Act (COGSA) apply by force of law to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 1300. All other claims arising under bills of lading are preempted by federal law. See, Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc., 896 F.2d 656, 661 (1st Cir. 1990); GFT U.S.A. Corp. v. M/V Export Freedom, 1996 A.M.C. 1882, 1895 (S.D.N.Y. 1996); National Automotive Publications, Inc. v. United States Lines, Inc., 486 F. Supp. 1094, 1982 A.M.C. 2299, 2304 (S.D.N.Y. 1980); B.F. McKernin & Co. v. United States Lines, Inc., 416 F. Supp. 1068, 1071, 1976 A.M.C. 1527, 1529-30 (S.D.N.Y.

1976).

While "there is no existing mechanism with which forum selection enforcement is a perfect fit," New Moon Shipping Co. v. Mann B & W Diesel AG, 121 F.3d 24, 29, 1998 A.M.C. 603 (2d Cir. 1997), courts have treated such applications as motions under Rule 12(b)(3) based on improper venue. See, Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 447, 2002 A.M.C. 2377, 2380 (S.D.N.Y. 2002).

And summary judgment is appropriate, if the record shows, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party shows an absence of evidence to support the non-moving party's case in this regard, the non-moving party then bears the burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 2554 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). Evidence that is merely colorable or not sufficiently probative will not defeat an otherwise proper motion for summary judgment. Anderson, 477 U.S. at 249, 106 S. Ct. at 2591.

Defendant HOEGH AUTOLINERS INC. (HOEGH), respectfully submits that the claims against HOEGH should be dismissed pursuant to the Norway forum-selection clause contained in the governing bill of lading. In the alternative, plaintiff's damages should be limited

2

to $500 pursuant to COGSA's limitation of liability.

POINT I.            THE CLAIMS AGAINST HOEGH SHOULD BE DISMISSED
                    PURSUANT TO THE BILL OF LADING'S NORWAY FORUM-
                    SELECTION CLAUSE.

     Under COGSA, the bill of lading sets forth the contractual
terms between the parties to a shipment, and the parties are bound
by the bill of lading's provisions. See, Southern Pacific Transp.
Co. v. Commercial Metals, 456 U.S. 336, 342-43 (1982) ("[E]ach
[term] has in effect the force of statute of which all effected
must take notice."); Wemhoener Pressen v. Ceres Marine Terminals,
Inc., 5 F.3d 734, 738 (4th Cir. 1993); Metropolitan Wholesale
Supply, Inc. v. M/V Royal Rainbow, 12 F.3d 58, 61 (5th Cir. 1994);
Hyundai Corp., U.S.A. v. Hull Ins. Proceeds of M/V Vulca, 800 F.
Supp. 124, 127 (D.N.J. 1992); Givaudan Delawanna v. Blijdendijk,
91 F. Supp. 663, 666, 1950 A.M.C. 1235, 1238 (S.D.N.Y. 1959); see
also, United Van Lines Inc. v. Hellman, 949 F. Supp. 126, 129
(E.D.N.Y. 1996) ("It is well-accepted that a bill of lading may
not be modified by extrinsic or parol evidence.").

     Forum selection or arbitration clauses are thus presumptively
valid and should, generally, be given full effect. Vimar Seguros
y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 1995 A.M.C.
1817, 1827 (1995); Carnival Cruise Lines, Inc. v. Shute, 499 U.S.
585, 595, 1991 A.M.C. 1697, 1705 (1991); Mitsubishi Motors Corp.
v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629, 105 S. Ct.
3346, 87 L.Ed.2d 444 (1985); M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 728, 1972 A.M.C. 1407

(1972) ("The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts"); Scherck v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S. Ct. 2449, 41 L. Ed. 2d 290 (1974); see also, J.C.B. Sales Ltd. v. Wallenius Lines, 124 F.3d 586, 592 (2d Cir. 1997); Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d. 36, 1997 A.M.C. 2126, 2129 (5th Cir. 1997).

Moreover, it is well-settled that a "broad" forum selection clause, governing "all" claims arising under the bill of lading, covers disputes connected to the carriage, even when claims are alleged to fall outside the contract on bailment or tort theories. See, Thyssen, Inc. v. M/V Markos N, 1999 U.S. Dist. LEXIS 12578, aff'd sub nom., Thyssen, Inc. v. Calypso Shipping Corp., 310 F.3d 102 (2d Cir. 2002), cert. denied, 123 S. Ct. 1573 (2003); Robalen, Inc. v. Generale de Banque, S.A., 1998 U.S. Dist. LEXIS 3931 (S.D.N.Y. March 27, 1998); see also, Fireman's Fund Ins. Co. v. Cho Yang Shipping Co., 131 F.3d 1336, 1998 A.M.C. 583 (9th Cir. 1997); F.D. Import & Export Corp. v. M/V Reefer Sun, 248 F. Supp. 2d 240 (S.D.N.Y. 2002).

Nor will enforcement of a forum selection or arbitration clause by a party entitled to do so be defeated merely because other claims not subject to the agreement may continue in the plaintiff's chosen forum. Glyphics Media, Inc. v. M.V. Conti Singapore, 2003 U.S. Dist. LEXIS 4387, *17-18, 2003 A.M.C. 667

4

(S.D.N.Y. 2003); <u>Fondiaria Assicurazione v. Ocean World Lines</u>, 2002 U.S. Dist. LEXIS 23913, \*5 (S.D.N.Y. 2002); <u>Royal Container</u>, 30 F. Supp. 2d at 663; <u>Abrar Surgery (PVT) Ltd. v. M.V. Jolly Oro</u>, 1999 U.S. Dist. LEXIS 6768, \*8, 2000 A.M.C. 109 (S.D.N.Y. 1999); <u>Union Steel Am. Co. v. M/V Sanko Spruce</u>, 14 F. Supp. 2d 682, 696 (D.N.J. 1998).

The face of the bill of lading at bar states "Hoegh Autoliners AS" at the top, and the bottom states that it was signed by "Hoegh Autoliners Inc. As Agents for Hoegh Autoliners AS, Carrier." (Bill of Lading, Exhibit C to Lauth Declaration). The very first clause on the reverse of the bill of lading also makes clear that the "'Carrier' is Hoegh Autoliners AS, of Oslo, Norway." <u>Id.</u> at ¶ 1.

The Himalaya Clause of Bill of Lading provides that "every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled shall also be available and shall extend to protect every such servant, agent or subcontractor of the Carrier as aforesaid." <u>Id.</u> at ¶ 13.

At all pertinent times, defendant HOEGH AUTLOINERS INC. was and is the local agent for Hoegh Autoliners AS. (Lauth Declaration, at ¶ 6; Bill of Lading, Exhibit C to Lauth Declaration). HOEGH AUTOLINERS INC. is not an ocean carrier and does not issue bills of lading on its own behalf. <u>Id.</u> HOEGH

5

AUTOLINERS INC. is a servant of the Carrier within the meaning of the Himalaya Clause. Id.

The bill of lading contains a forum-selection clause providing that "[a]ny claim or dispute arising under or in connection with this Bill of Lading (whether in contract, tort or otherwise) shall be referred to and decided by Oslo City Court, Norway." (Bill of Lading, Exhibit C to Lauth Declaration, at ¶ 2).

The Clause Paramount also provides that, "[n]otwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from the United States, this Bill of Lading shall have effect subject only to the provisions of the United States Carriage of Goods by Sea Act, approved April 16, 1936, which shall supersede all other acts, statutes, conventions and treaties and which shall, alone, be deemed incorporated herein." Id. at ¶ 2(C).

The bill of lading at issue thus not only specifically mandates exclusive jurisdiction in Norway, but also expressly provides that the minimum protections afforded by COGSA will be preserved. Id.; see also, Abrar Surgery (PVT) Ltd. v. M.V. Jolly Oro, 1999 U.S. Dist. LEXIS 6768, **5-6, 2000 A.M.C. 109 (S.D.N.Y. 1999) ("Plaintiffs, who carry the burden of persuasion, have failed to establish that the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees . . . Upon examination of the bill of lading,

Case 1:07-cv-05949-VM    Document 16    Filed 02/05/2008    Page 9 of 20
however, it appears likely that COGSA itself governs the rights and liabilities of both parties . . . and there is no indication from either party that [the foreign] court would not apply COGSA."). Any differences between the application of Norwegian law and United States law are thus completely irrelevant.

But bill of lading provisions aside, Norway is a party to the Hague-Visby rules. William Tetley, Marine Cargo Claims, Appendix A (3d ed., Blais 1988). The contractually selected forum having acceded to the "fraternal equivalent of COGSA," the application of Norwegian law could not "'reduce the carrier's obligations . . . below what COGSA guarantees,'" in any event. Reed & Barton Corp. v. M.V. Tokio Express, 1999 U.S. Dist LEXIS 1807, 1999 A.M.C. 1088, 1092 (S.D.N.Y. 1999); Jewel Seafoods Ltd. v. M/V Peace River, 39 F. Supp. 2d 447, 1999 A.M.C. 2053, 2058 (D.S.C. 1999); see also, Webster v. Royal Caribbean Cruises, Ltd., 124 F. Supp. 2d 1317, 2001 A.M.C. 2243 (S.D. Fla. 2000) (enforcing Norway forum selection clause); Tennyo Maritime, Inc. v. Norsk Hyrdo S.S., 1995 U.S. Dist. LEXIS 4680 (E.D. La. 1995) (enforcing Norway forum-selection clause). There is, therefore, simply no impediment to dismissal in favor of the contractually-selected forum.

Plaintiff's opposing papers are largely devoted to the package limitation issue. However, plaintiff does generally assert that the terms of the bill of lading should not be enforced because plaintiff allegedly did not receive a copy of the bill of lading until the vessel sailed. Even assuming arguendo these

7

assertions to be factually correct, they are misplaced on the law.

The communications between plaintiff and his own forwarder are of no moment with respect to HOEGH's claims. As far as an ocean carrier such as HOEGH AUTOLINERS AS is concerned, "[t]he bulk of authority on this issue indicates that the freight forwarder is properly considered the shipper's agent." Pearson v. Leif Hoegh & Co., 1992 U.S. App. LEXIS 450, 1992 A.M.C. 1025 (4th Cir. 1992); see also, United States v. American Union Transp., 327 U.S. 437, 442-43 (1946) ("By engaging in these many activities of the forwarding business, independent forwarders . . . act as agents of the shipper."); ABN Amro Verzekeringen BV v. Geolistics America, Inc., 485 F.3d 85, 97 (2d Cir. 2007) ("As agent for the shipper, the freight forwarder has the authority to enter into a usual and customary shipping contract."); United States v. Ventura, 724 F.2d 305, 311 (2d Cir. 1983) ("Recognizing the nature of this relationship, courts have described freight forwarders as agents of the shipper for purposes of arranging cargo transport."); Tarnawski v. Schenker, Inc., No. C02-5659FDB, 2003 U.S. Dist. LEXIS 22614, **6-72003 A.M.C. 2230 (W.D. Wash. May 6, 2003) ("[T]he U.S. Supreme Court, the Ninth Circuit, and other circuits as well have held that freight forwarders are shippers' agents."); see also, Insurance Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 937 n.2 (11th Cir. 1990) ("[Underlying carriers such as Bottachi treat Mar as Edussystems' agent."), cert. denied, 111 S. Ct. 675 (1991); Orion v. Humaco, 851 F. Supp. 575, 578

(S.D.N.Y. 1994) ("[T]he NVOCC is a common carrier with respect to the shippers who employ its services, but with respect to the vessel and her owner, the NVOCC is deemed an agent of the shipper.'); Atlantic Mutual Ins. Co. v. M/V President Tyler, 765 F. Supp. 815, 818 n.3 (S.D.N.Y. 1990) (citing Puerto Rico Maritime v. Crowley Towing, 747 F.2d 803, 804 (1st Cir. 1984); see also, Glyphics Media, Inc. v. M.V. Conti Singapore, 2003 U.S. Dist. LEXIS 4387, 2003 A.M.C. 667 (S.D.N.Y. 2003) (citing Jockey Int'l Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 457 (S.D.N.Y. 2002)); Gross Mach. v. M/V Alligator Independence, 1994 A.M.C. 732, 735-36 (S.D.N.Y. 1992). There is no apparent factual dispute as between HOEGH and the defendant forwarder, AMERICAN EXPORT LINES (AEL), with respect to the proper issuance of the bill of lading.

Moreover, "'[i]t is not unusual to issue a bill of lading after a carrier has taken possession of cargo and courts have regularly held that this does not prevent parties from being bound by its terms.'" American Home Assurance Co. v. Hapag Lloyd Container Line, 03 Civ. 5462 (SAS), 2004 U.S. Dist. LEXIS 15197, *14 (S.D.N.Y. Aug. 4, 2004) (quoting Anvil Knotwear, Inc. v. Crowley Am. Transp., Inc., 00 Civ. 3243 (NRB), 2001 A.M.C. 2382, 2384 (S.D.N.Y. July 27, 2001)); see also, Marine Transp. Serv's Sea Barge Group v. Python Performance Marine Corp., 16 F.3d 1133, 1141, 1994 A.M.C. 2948 (11th Cir. 1994); Luckenbach S.S. Co. v. American Mills Co., 24 F.2d 704 (5th Cir. 1928); Mack Trucks v.

9

Farrell Lines, 89 Civ. 1946 (RPP), 1990 WL 3926, 1990 U.S. Dist. LEXIS 308, 1990 A.M.C. 2669 (S.D.N.Y. Jan. 16, 1990); Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F. Supp. 846, 848, 1966 A.M.C. 2651 (S.D.N.Y. 1965) ("The fact that the bill of lading had not yet been issued did not alter the contractual relationship of the parties.").

And, in any event, the Dock Receipt plaintiff has now disclosed was signed on behalf of the Master and plainly provided that it was "SUBJECT TO ALL OF THE TERMS OF THE UNDERSIGNED'S REGULAR FORM OF DOCK RECEIPT AND BILL OF LADING WHICH SHALL CONSTITUTE THE CONTRACT UNDER WHICH THE GOODS ARE RECEIVED, COPIES OF WHICH ARE AVAILALABLE ON REQUEST AND MAY BE INSPECTED AT ANY OF ITS OFFICES." (Dock Receipt, Exhibit 3(d) to Plaintiff's Opposition) (emphasis in original). Not only was plaintiff thus placed on notice of the bill of lading's terms, but they were also binding upon him by virtue of their incorporation in the Dock Receipt. See, Cincinnati Milacron-Heald Corp. v. Universal Maritime Serv. Corp., 1995 U.S. Dist. LEXIS 21176, 1996 A.M.C. 412 (D.N.J. 1995); Pyropower Corp. v/ M/V Alps Maru, 1993 U.S. Dist. LEXIS 2174, at *28, 1993 A.M.C. 1562 (E.D. Pa. 1993); Mack Trucks, 1990 WL 3926; Ferrex Int'l, Inc. v. M/V Rio Chone, 1989 A.M.C. 1109 (D. Md. 1988); Nathan Trotter & Co. v. Delta S.S. Lines, Inc., 1985 A.M.C. 2783, 2786 (E.D. Pa. 1982); St. Paul Fire and Marine Ins. Co. v. A.P. Moller, Inc., 1996 A.M.C. 2012 (N.J. Sup. Ct. 1996).

**POINT II.         HOEGH AUTOLINERS INC. IS NOT A CARRIER SUBJECT TO
                   LIABILITY FOR THE LOSS ALLEGED.**

"[O]nly a carrier who has entered into a contract of carriage
with the shipper has a duty to properly and carefully load,
handle, stow, carry, keep, care for, and discharge the goods
carried," Thyssen Steel Corp. v. The Adonis, 364 F. Supp. 1332,
1974 A.M.C. 389 (S.D.N.Y. 1973), and thus third-party beneficiary
claims against vessel owners have been routinely rejected. See,
Glynwed Steels Ltd. V. Great Lakes and European Lines, 1979 A.M.C.
1290 (N.D. Ill. 1978); see also, Mahroos v. Tatiana L, 1988 A.M.C.
757 (S.D.N.Y. 1986); United Nations Children's Fund v. The
Nordstern, 251 F. Supp. 833 (S.D.N.Y. 1965); see also, People's
Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346
(2d Cir. 1986).

Ordinary contract principles as applied under the federal
maritime law determine who is a party to a contract, and the
federal maritime law embraces agency principles. See, Kirno Hill
Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980); Interocean
Shipping Co. v. National Shipping and Trading Corp., 523 F.2d 527,
539 (2d Cir. 1975), cert. denied, 423 U.S. 1054 (1976).

Accordingly, where a principal is identified in the contract,
that principal's agent will not be considered a party to the
contract and will not be bound by its terms. See, Hudson Trading
Co. v. Hasler & Co., 11 F.2d 666,667 (2d Cir. 1926); Tubos de
Acero de Mexico v. Dynamic Shipping Inc., 249 F. Supp. 583, 1966

11

A.M.C. 1903 (S.D.N.Y. 1966); Instituto Cubano de Estab v. S.S. Theotokos, 155 F. Supp. 945 (S.D.N.Y. 1957).

On its face, the face of the bill of lading states "Hoegh Autoliners AS" plainly at the top, and the bottom states that it was signed by "Hoegh Autoliners Inc. As Agents for Hoegh Autoliners AS, Carrier." (Exhibit C to Lauth Declaration). The very first clause on the reverse of the bill of lading also makes clear that the "'Carrier' is Hoegh Autoliners AS, of Oslo, Norway." Id. at ¶ 1. HOEGH AUTOLINERS INC. was and is merely the local agent for Hoegh Autoliners AS. Id.; see also, Lauth Declaration, at ¶ 6. HOEGH AUTOLINERS INC. never took possession of the cargo, is not an ocean carrier and does not issue bills of lading on its own behalf. Id. Plaintiff has clearly sued the wrong party as a matter of law.

**POINT III.    HOEGH CAN NOT BE HELD RESPONSIBLE FOR PLAINTIFF'S FAILURE TO PROVIDE THE CUSTOMS DOCUMENTATION WHICH CAUSED THE LOSS.**

Even if a plaintiff has established a prima facie case under COGSA, "[t]he vessel may exonerate its responsibility by carrying its burden of proof that the damage did not occur because of its own acts." Associated Metals & Minerals Corp. v. M/V Arktis Sky, 978 F.2d 47, 1993 A.M.C. 509 (2d Cir. 1992); see also, Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 1995 A.M.C. 1305, 1310-12 (5th Cir. 1995); Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619, 1980 A.M.C. 505, 513 (2d Cir. 1980); Aunt Mid, Inc. v. Fjell-Oranje Lines, 458 F.2d 712, 1972 A.M.C. 677 (7th Cir.),

12

cert. denied, 409 U.S. 877, 1973 A.M.C. 539 (1972); Empire Distributors, Inc. v. Unites States Lines, Inc., 1988 A.M.C. 455, 461 (S.D. Ga. 1986).

Accordingly, a carrier should not be held liable for a plaintiff's own failure to clear its cargo through customs. See, Mendes Junior Int'l Co. v. M/V Sokai Maru, 758 F. Supp. 1169, 1178 (S.D. Tex. 1991) ("The delay occurred as a result of customs documents not being in order, so that the ship could not obtain a berth and unload on schedule. Matters of customs clearance are the responsibility of the shipper."). Also, as discussed in Transatlantic Marine Claims Agency v. M/V Ever Refine, 96 Civ. 9141 (JSR), 1997 U.S. Dist. LEXIS 14823 (Sept. 29, 1997):

> [T]he moving defendants have adduced evidence, unrebutted by plaintiff, that damage to the cargo at issue occurred, subsequent to their possession, after the Customs Service ordered the cargo moved to the bonded warehouse. This satisfies the "restraint of princes" exception of § 1304(2)(g), which relieves carriers of liability for damages occurring during "arrest or restraint of princes [or] rulers . . . under legal process." See Benjamin v. M.V. "Balder Eems", 639 F. Supp. 1497 (S.D.N.Y. 1986). Likewise, § 1304(2)(q), which excepts damages resulting from "any other cause arising without the actual fault and privity of the carrier [or] the agents or servants of the carrier," exempts the moving defendants from liability for damages that occurred while the cargo was being handled either by the U.S. Customs Service or by the non-moving defendants uninvolved in the transportation to and from the warehouse and

13

the loading and unloading there.

Ever Refine, 1997 U.S. Dist LEXIS, at **5-6.  Customs clearance is the responsibility of the shipper, and a carrier simply can not be subjected to liability occurring as a result of the actions of local customs authorities.

In the case at bar, assuming arguendo HOEGH could somehow otherwise be held liable, plaintiff alleges that the non-delivery occurred due to the lack of a completed Customs Form "M," resulting in delays which caused the accrual of excessive port charges plaintiff was unwilling or unable to pay.  (Complaint, Exhibit A to Lauth Declaration, at ¶¶ 11-22).  Plaintiff's damages are thus alleged to arise from plaintiff's own failure to clear its cargo though customs, a cause of loss for which the carrier is relieved of liability both as a matter of law and of contract. See,  Bill of Lading, Exhibit C to Lauth Declaration, at ¶ 17 (C) ("The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.").

14

POINT IV.        IN THE ALTERNATIVE, PLAINTIFF'S DAMAGES, IF ANY,
                 SHOULD BE LIMITED TO $500 PURSUANT TO THE COGSA
                 PACKAGE LIMITATION.

COGSA  provides:

> Neither the carrier nor the ship shall in any
> event be or become liable for any loss or
> damage to or in connection with the
> transportation of goods in an amount
> exceeding $500 per package lawful money of
> the United States, or in the case of goods
> not shipped in packages, per customary
> freight unit, or the equivalent of that sum
> in other currency, unless the nature and
> value of such goods have been declared by the
> shipper before the shipment and inserted in
> the bill of lading.

46 U.S.C. § 1304(5).

Furthermore, "Section 1304(5) establishes that a plaintiff is entitled to a single recovery not to exceed the equivalent of $500 per package," and can not "'side-step' COGSA's limitation of the amount of damages that a plaintiff is entitled to recover when multiple defendants are subject to liability." Thyssen, Inc. v. S/S Eurounity, 21 F.3d 533, 540-41, 1994 A.M.C. 1638 (2d Cir. 1994); accord, Secrest Mach. Corp. v. S.S. Tiber, 450 F.2d 285, 286-87, 1972 A.M.C. 815, 817 (5th Cir. 1971) (per curiam).

"COGSA's limitation of $500 per 'package' or 'customary freight unit' simply applies to each package or customary freight unit, properly defined." Vision Air Freight Serv., Inc. v. M/V National Pride, 155 F.3d 1165, 1999 A.M.C. 1168, 1173-74 (9th Cir. 1998) ("Each unpackaged refueling truck is properly defined as a customary freight unit under COGSA, and the district court

15

therefore did not err in holding that the bill of lading invoked COGSA's liability limitation."); see also, Hayes-Leger Assoc's v. M/V Oriental Knight, 765 F.2d 1076, 1081 n.10, 1986 A.M.C. 1724 (11th Cir. 1985) (noting "customary freight unit" determination "varies from contract to contract").

Again, the bill of lading in this case provides that, "[n]otwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from the United States, this Bill of Lading shall have effect subject only to the provisions of the United States Carriage of Goods by Sea Act, approved April 16, 1936, which shall supersede all other acts, statutes, conventions and treaties and which shall, alone, be deemed incorporated herein." (Bill of Lading, Exhibit C to Lauth Declaration, at ¶ 2(C)).

Accordingly, the "UNIT LIMITATION OF RESPONSIBILITY" Clause states:

> One vehicle shall be considered one freight unit . . . Neither the Carrier nor the ship shall be or become liable for any loss or damage to or in connection with the transportation of the goods in an amount exceeding $500 lawful money of the United States of America per package (unit), or in case of goods not shipped in packages per customary freight unit.

Id. at ¶ 11.

The face of the bill of lading identifies one vehicle, without describing and packaging or reciting any higher value for the cargo. (Bill of Lading, Exhibit C to Lauth Declaration).

16

Thus, even if successful, plaintiff's damages should be limited, at the very most, to $500 as a matter of law.

Plaintiff's opposing papers allege, apparently in the alternative, that he declared a higher value for the goods by providing to AEL a copy of the vehicle's invoice, or that a "fair opportunity" to declare a higher value was not afforded to him.

However, "'[t]he shipper must declare the value of its cargo on the face of the bill of lading, not on some other related documents' if it intends to avoid the limitation of carrier liability for lost or damaged cargo." Expeditors Int'l of Wash., Inc. v. Crowley Am. Transp., Inc., 117 F. Supp.2d 663, 671 n.3, 2001 A.M.C. 518 (E.D. Ohio 2000) (quoting Marine Transp. Serv. Sea-Barge Group Inc. v. Python High Performance Marine Corp., 16 F.3d 1133, 1141 (11th Cir 1994)). The invoice provided to AEL thus has no place in the analysis.

Similarly, the fair opportunity is determined by examination of the bill of lading, without recourse to extrinsic evidence, and, in this regard, express mention of COGSA in the bill of lading should suffice. See, The Nippon Fire & marine Ins. Co. v. M.V. Tourcoing, 167 F.3d 99, 101, 1999 A.M.C. 913 (2d Cir. 1999) (citing General Elec. Co. v. M.V. Nedlloyd, 817 F.2d 1022, 1029 (2d Cir. 1987) ("The language on the back of the [bill of lading] incorporating COGSA's provisions and the space for declaring excess value on the front are sufficient notice of the limitation of liability and the means of avoiding it."); Binladen BSB

17

_Landscaping v. M.V. Nedlloyd Rotterdam_, 759 F.2d 1006, 1017 n.12 (2d Cir. 1985) (same)); _see also_, _Associated Metals & Minerals Corp. v. M/V Olympic Mentor_, 1997 A.M.C. 1140, 1152 (S.D.N.Y. 1995); _Union Carbide Corp. v. M.V. Michele_, 764 F. Supp. 783, 1992 A.M.C. 63 (S.D.N.Y. 1990); _Ins. Co. of N. Am. v. M/V Xiang He_, 1993 A.M.C. 342, 346 (S.D.N.Y. 1990).  The bill of lading at issue repeatedly incorporates COGSA and its limitation of liability and contains a box on its face "TO BE FILLED IN IF PARTIES WISH TO INCRESE CARRIER'S LIABILITY . . ."  (Bill of Lading, Exhibit C to Lauth Declaration) (emphasis in original).  The above should readily meet any fair opportunity challenge.

CONCLUSION.

    WHEREFORE, HOEGH urges the Court to grant the instant motion for an order, dismissing the claims against HOEGH and granting to HOEGH such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, New York
       February 5, 2008

                                    Respectfully submitted,

                                    MAHONEY & KEANE, LLP
                                    Attorneys for Defendant
                                    HOEGH AUTOLINERS INC.

                          By: _____
                                    Garth S. Wolfson (GW 7700)
                                    111 Broadway, Tenth Floor
                                    New York, New York  10006
                                    (212) 385-1422