8968.SHV.JAD
CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR
61 BROADWAY, SUITE 3000
NEW YORK, NEW YORK 10006
212-344-7042

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLABISI SALIS<br>　　　　　　　　Plaintiffs,<br>v.<br>AMERICAN EXPORT LINES and HOEGH AUTOLINERS INC.,<br>　　　　　　　　Defendants. | 07 cv 5949<br>ECF<br><br>AMERICAN EXPORT LINES<br>REPLY MEMORADUM OF LAW<br>IN SUPPORT OF ITS<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT LIMITING ITS LIABILITY TO<br>$50.00 PURSUANT TO THE ITS TERMS AND<br>CONDITIONS OF SERVICE |

　　　　Defendant American Export Lines (hereinafter referred to as "AEL") by and through its attorneys, Cichanowicz, Callan, Keane, Vengrow & Textor, LLP, submits this reply memorandum of law in support of its motion for partial summary judgment in its favor on the basis of a contractual limitation of liability clause limiting the potential amount of damages for one shipment to $50.00. This motion is supported by the Affirmation of Lisa Scalora, the Claims Manager of AEL (hereinafter "Scalora Affidavit").

**UNDISPUTED FACTS**

　　　　Plaintiff's amended complaint seeks damages related to the alleged non-delivery of one camper (i.e. unit) shipped from the United States to the Port of Lagos, Nigeria. (Scalora Affidavit, Exhibit 1) With regard to AEL (the freight forwarder) plaintiff alleges that in April 2006, its agent approached AEL to arrange for the export of the subject unit. (Scalora Affidavit, Exhibit 1, ¶ 4) Beginning in March 2006, plaintiff approached AEL, in its role as a freight forwarder, to arrange for the shipping of 159 individual units to Nigeria. (Scalora Affidavit ¶ 6)

In AEL's amended answer to the plaintiff's amended complaint, AEL set forth affirmative defenses; specifically, that "the circumstances alleged in plaintiff's complaint were due to causes for which AEL is not liable or responsible by virtue of its freight forwarder terms and conditions…" and further that "AEL's liability, if any, is limited to $50.00 pursuant to its freight forwarder terms and conditions." (Exhibit 2, ¶ 24, ¶ 27)  Despite (i) the ongoing commercial relationship between plaintiff and AEL, (ii) the invoice, issued on April 28, 2006 and paid on July 31, 2006, containing AEL's Terms and Conditions of Service (Exhibit 3) and (iii) the aforementioned affirmative defenses (Exhibit 2), plaintiff incorrectly asserts in the opposition to AEL's oral motion to limit it's liability, that he was <u>never</u> informed by AEL of its limitation of liability.  (Plaintiff's opposition, pg. 4, ¶ 2)  Plaintiff has never argued that he purchased liability coverage for the subject shipment, although same was offered under AEL's Terms and Conditions of Service and on its website.  (Scalora Affidavit ¶ 11, ¶ 12, Exh's. 3&6)

On or before April 28, 2006, subject to AEL Terms and Conditions of Service, plaintiff hired AEL to arrange for the shipment of the subject unit from the United States to Nigeria.  (Scalora Affidavit ¶ 7 & plaintiff's amended complaint ¶ 4)  Clause 9 of the subject Terms and Conditions of Service states:

**Clause 9. Disclaimers: Limitation of Liability**.

(a) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;

(b) Subject to (c) below. Customers agree that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and approximate cause of any injury to Customer, including loss or damage to Customers goods, and the Company shall in no event be liable for the acts of third parties;

(c) In connection with all services performed by the Company, Customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which

2

request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

(d) In the absence of additional coverage under (b) above, the Company's liability shall be limited to the following:

    (i)  Where the claim arises from activation other than those relating to customs brokerage, $50.00 per shipment or transaction, or

    (ii) Where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less;

(e) In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.  (Exhibit 3)

In addition, AEL maintains a website at http://www.shipit.com/Home.aspx wherein it offers liability insurance.  The insurance link on the website provides as follows:

**INSURANCE**

AEL can provide insurance for all types of cargo. Ace Insurance is a global insurance company with own offices in over 50 countries and correspondence in some 90 countries. Ace traces its heritage to 1792 and has assets of $49 billion. AEL can provide insurance for all types of cargo including automobiles and fragile goods. Be assured your cargo is insured by highly experienced marine insurers who have claim offices worldwide. (Exhibit 6)

In turn, AEL arranged for the shipment with the ocean carrier and provided plaintiff with the necessary Dock Receipt to deliver the unit to the pier for ocean transport.  (Scalora Affidavit ¶ 9)  The Dock Receipt states in the lower right side:

"Received the above described goods or packages subject to all of the terms of the undersigned's [i.e. the ship's Master] regular form of dock receipt and bill of lading which shall constitute the contract under which the goods are received.  Copies of which are available from the carrier on request and may be inspected at any of its offices."  (Exhibit 4)

On or about May 19, 2006, the subject unit was loaded on to the ocean vessel and the ocean carrier issued a bill of lading (no. 133) for export of the subject unit.  (Scalora Affidavit ¶

9, ¶ 15)  As a result, AEL had in fact arranged for the ocean shipment of the subject unit to Nigeria.

Even assuming there was any liability on the part of AEL (which we do not) AEL's Terms and Conditions of Service specifically state that AEL's liability is limited to $50.00 for this shipment. (Scalora Affidavit ¶ 11)   Also, AEL offered liability coverage for the subject shipment which plaintiff failed to purchase.  (Scalora Affidavit ¶ 11, ¶ 12)   Beginning in March 2006, plaintiff hired AEL 159 times to arrange for the shipping of individual units to Nigeria. Plaintiff was repeatedly put on notice of AEL's Terms and Conditions and plaintiff repeatedly accepted AEL's Terms and Conditions by paying the applicable invoices for AEL's services. (Scalora Affidavit ¶ 6)   Therefore, even if AEL is found liable, the maximum amount that plaintiff could possibly receive in damages from AEL for this one unit is $50.00. (Scalora Affidavit ¶ 11)

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment pursuant to Rule 56 of the FRCP will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. see Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); see also Anderson v. Liberty Lobby Inc., 477 US 242, 106 S.Ct. 2505 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers and interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. F.D.I.C. v. Giammettei, 34 F.3d 52, 34 (2d Cir 1994) citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. at 2553 (1986); see also Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Jeffreys

4

v. City of New York, 426 F. 3d 549, 553 (2d Cir. 2005) (citing Anderson v. Liberty Lobby Inc., 477 US at 248, 106 S.Ct. 2510 (1986).

In deciding the motion, a court draws reasonable inferences and resolves ambiguities in favor of the non-moving party.  See United States v. Diebold Inc., 369 US 654, 655. 82 S.Ct. 993, 994 (1962) (per curium); Donahue v. Windsor Locks Bd. Of Fire Commissioners, 834 F2d 54, 57 (2d Cir. 1987).  Summary Judgment for the moving party is appropriate "where the non-movant's evidence is merely colorable, conclusory, speculative, or not significantly probative." Travelers Ins. Co. v. Broadway W. St. Assocs., 164 FRD 154, 160 (SDNY 1995) (citing Anderson v. Liberty Lobby Inc., 477 US 242, 106 S.Ct. 2505 (1986).

"When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other.  Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Heublien, Inc. v. United States, 996 F2d 1455, 1461 (2d Cir. 1993).  Of course, if no purported issues of fact prove to be genuine and material, then summary judgment can be properly granted.

As outlined above in the Undisputed Facts and discussed further below, AEL's motion is a threshold motion for which there are no facts to establish a genuine issue for trial and thus, AEL's motion to limit it's liability to $50.00 should be granted.

## FREIGHT FORWARDER LIMITATIONS OF LIABILITY ARE ROUNTINELY ENFORCED

In this case, AEL operated as a freight forwarder with respect to the shipment in question. As a freight forwarder, AEL's right to limit its liability with respect to any shipment is accordingly protected and covered by the relevant provisions of the applicable New York

5

statutes and the corresponding case law. Generally, a freight forwarder like AEL (an arranging forwarder who never actually handles the goods) is little more than a "travel agent" that is "not liable to a shipper for anything that occurs to the goods being shipped." Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126, 129 (2d Cir.2000); see Zima Corp. v. M/V Roman Pazinski, 493 F.Supp. 268, 273 (S.D.N.Y.1980). There is a "well settled legal distinction between forwarders and carriers"; the former merely arranges for transport, the latter do the "heavy lifting." Prima, 223 F.3d at 129. It is undisputed that, in this particular case, AEL arranged for the transportation but never actually handled the cargo. As such, in this case, AEL acting as a freight forwarder has a right to limit its liability.

New York law does not restrict the ability of non-carrier freight forwarder to limit their liability through contract. However, in the commercial context, the Court of Appeal did hold that "[i]t is the public policy of this State, however, that a party may not insulate itself from damages caused by grossly negligent conduct," a principle that "applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum. Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must 'smack of intentional wrongdoing' " and "evince a reckless indifference to the rights of others." Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 583 N.Y.S.2d 957, 963, 593 N.E.2d 1365 (1992) (quoting Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 461 N.Y.S.2d 746, 750, 448 N.E.2d 413 (1983)) To avoid such liability limitation in the non-carrier context, New York law requires either affirmative wrongdoing or a reckless indifference to the rights of others-"whether or not termed 'gross negligence.' " Sommer, 583 N.Y.S.2d at 963 n. 3, 593 N.E.2d 1365. Even when viewed in the light most favorable to the plaintiff, AEL's actions could never amount to gross negligence or reckless indifference.

6

Furthermore, it is well settled that "conclusory allegations" and "mere speculation" and "conjecture" will not suffice to transform possible negligence into possible recklessness or more. <u>Chukwuma v. Groupe Air France, Inc., 767 F.Supp. 43, 48 (S.D.N.Y.1991)</u> (discussing allegations intended to circumvent limitation of liability under Warsaw convention). Here, plaintiff has not set forth any facts that amount to reckless indifference or intentional wrongdoing. Plaintiff has never even alleged that AEL failed to arrange for the shipment as contracted. In fact, it is undisputed that AEL was hired to arrange for the shipment and that AEL did in fact arrange for the shipment.

A freight forwarder may avail itself of a limitation of liability as long as (a) the language of the limitation is clear, (b) the shipper is aware of the terms of the limitation and (c) the shipper can change the terms by indicating the true value of the goods being shipped. <u>N.Y.U.C.C. § &-3092(2)</u>; see also <u>La Primadora Cigar Corp. v. Wolf Delivery Serv., Inc.,</u> 29 Misc.2d 586, 587, 208 N.Y.S.2d 107, 108 (App. Term 1st Dep't 1960) (per curiam); cf. 49 U.S.C. App. § 10730(b)(1) (1982 & Supp. V 1987) (similar scheme under Interstate Commerce Act). In order for a shipper to change the terms, he must provide written notice of the value of the goods which must be delivered to the freight forwarder and reflected by the payment of a commensurately higher fee. <u>Calvin Klein, Ltd. v. Trylon Trucking Corp</u> 892 F.2d 191, 195-196 (2d Cir. 1989). In this case, AEL's limitation was clearly written in Clause 9(d)(i) on the reverse side of the subject invoice, the plaintiff was or should have been on notice of the limitation through its commercial relationship and course of dealings (see discussion below) with AEL and the shipper had an opportunity to purchase liability coverage to change the liability terms, which he did not. As a result, AEL may avail itself of its limitation of liability provision.

As suggested above, parties may limit liability by terms and conditions like those contained on the AEL invoice where there is an established prior course of dealings. In <u>Calvin Klein Ltd. v. Trylon Trucking Co.</u>, the Second Circuit upheld a $50.00 limitation of liability where the parties were business entities with an ongoing commercial relationship involving numerous prior transactions. <u>892 F.2d 191, 195 (2d Cir.1989)</u> ("Where such entities deal with each other in a commercial setting, and no special relationship exists between the parties, clear limitations between them will be enforced." citing <u>Florence v. Merchants Cent. Alarm Co.</u>, 51 NY2d 793, 795, 412 NE 1317, 1318, 433 NYS 2d 91, 92 (1980))   In this case, each of the 159 individual shipments arranged for by AEL on behalf of plaintiff was under the same terms and conditions as the last, including a limitation of AEL's liability.

It cannot be ignored that New York courts have routinely enforced the $50.00 limitation. In fact, limitations have been upheld even in cases where there was an absence of contractual documents covering the shipment in question. ["in view of the ongoing commercial relationship between plaintiff shipper and defendant freight forwarder involving numerous prior transactions, all of which were concededly subject to a $50 limitation of liability. <u>Maklihon Mfg.Corp. v. Air-City Inc.</u>, 224 A.D.2d 187, 637 N.Y.S.2d 129 (App.Div. 1996) citing <u>Calvin Klein, Ltd. v. Trylon Trucking Corp</u> 892 F.2d 191, 195-196 (2d Cir. 1989)].  Similarly, in this case, there was an ongoing commercial relationship between plaintiff and AEL wherein AEL arranged for 159 shipments for plaintiff, all of which were subject to the $50 limitation.  In <u>Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc.</u>, Slip Copy 2005 WL 2038590 (E.D.N.Y.), the court found that regardless of the existence of a Power of Attorney and its reference to any separate "Terms and Conditions", a shipper clearly accepts the terms and conditions of a customs broker that are included in its invoices, especially the $50.00 limitation of liability.  That <u>Well Luck</u> case is

8

directly on point since, in the case at bar, the $50.00 limitation language was also unambiguously indicated on all of AEL's invoices.

Throughout the commercial relationship, plaintiff received and paid the AEL invoices which specified the Terms and Conditions of Service in detail and offered plaintiff an opportunity to purchase liability coverage. (<u>Scalora Affidavit</u>, Exhibit 3, Clause 9(c))  Plaintiff was repeatedly put on notice that AEL Terms and Conditions contained a limitation and that he had an opportunity to purchase additional liability coverage. (Scalora Affidavit ¶ 6, ¶ 11, ¶ 12) Plaintiff approached AEL to arrange for the shipping of the subject unit. Pursuant to its Terms and Conditions of Service, AEL arranged for the shipping of the subject unit. AEL's liability is limited to $50.00 per shipment, unless plaintiff had requested, in writing, and had paid for additional liability coverage, which he did not. Therefore, AEL's liability must be limited as a matter of law to fifty dollars ($50.00).

### C.     CONCLUSION

For all of the above reasons, Defendant AEL respectfully requests that its Motion for Partial Summary Judgment to Enforce its Limitation of Liability Clause be granted and its liability be accordingly limited as a matter of law to $50.00.

**Dated:** New York, New York
February 6, 2008

                                      **CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP**
**61 Broadway, Suite 3000**
**New York, New York 10006**
Attorneys for Defendant,
America Export Lines

                                      **By:    <u>S/ Stephen Vengrow</u>**
                                                 **Steven H. Vengrow (3479)**

## CERTIFICATE OF SERVICE BY ECF

The undersigned declares under penalty of perjury that the following is true and correct.

1.I am over the age of eighteen years and I am not a party to this action.

2.On February 7, 2008, I served the following by filing via ECF a true and complete copy of American Export Lines Reply to Plaintiff's Opposition to AEL's Partial Motion for Summary Judgment Limiting its Liability as a Matter of Law to the following parties at:

To:Salis and Associates
42 Broadway, Rm 1133
New York, NY 10004

Mahoney and Keane
111 Broadway, 10th Floor
New York, New York 10006

DATED:New York, New York
February 7, 2008

s/ Jessica De Vivo
Jessica A. De Vivo (JAD6588)