# EXHIBITS

"Doing It Right"
Dennis Adams

WOODBRIDGE DODGE·LINCOLN MERCURY
DODGE LINCOLN-MERCURY
**(732) 826-1220 (732) 697-0400**
www.dennisadams.com

35273

Retail Buyer's Order:
☑ New ☐ Used
☐ Demo ☐ ______

Customer's Name: SALIS & ASSOCIATES PC Date: APR 26TH 20 06
Address: 42 BROADWAY AVENUE NEW YORK CITY NY 10004 (Street, City, State, Zip)
Residence Phone: (646)752-0892 Business Phone: ______ Salesperson: KELLEHER, FRANK
[redacted] Email: ______
Please Enter My Order For One: 2006 SUNNYBROOK (YEAR AND MAKE) Model: TT Mileage: ______
Body Type: TRAVEL TRAILER Color: BAHAMA BREEZE Top: ______ Trim: ______
Stock No.: 618R V.I.N. No.: 4UBAS0R2361D73648 To Be Delivered: AS SOON AS POSSIBLE

**IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS ORDER.**

| Item | Amount | |
|---|---|---|
| Price of Unit | 16500 | 00 |
| Dealer Participation | 385 | 00 |
| **PRICE OF VEHICLE** | 16888 | 00 |
| Less Trade-in | | |
| **TOTAL TAXABLE AMOUNT** | 16888 | 00 |
| Less Rebate (If Any) | | |
| State Sales Tax | | |
| Etch (optional) | $169. | 00 |
| Registration/Title Fee (Estimated) ☐ New ☐ Tran. ☐ Comm. (See Paragraph 15 On Reverse Side) TITLE ONLY | 20 | 00 |
| Motor Vehicle Tire Fee - $1.50 per New Tire | | |
| Documentary Fee (Admin. & Clerical Exp. $72.00; Document Delivery Service & Notary Fee $57.00; Computer Terminal & Access $60.00) (See Paragraph 16 On Reverse Side) | $189. | 00 |
| **NET PAY-OFF ON TRADE-IN** | | |
| SUB TOTAL | 17097 | 00 |
| EXTENDED WARRANTY (optional) | | |
| USED CAR PREP & SET UP (optional) | | |
| ALARM SYSTEM (optional) | | |
| | | |
| ADDITIONAL TAX | | |
| Deposit | 4500 | 00 |
| BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT, DUE DEALER ON DELIVERY | | |
| **BALANCE DUE** | 12597 | 00 |

IF A NEW VEHICLE SALE OR LEASE . . .
The only warranties applying to this vehicle are those offered by the manufacturer. Dealer sells/leases this vehicle "as is" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks. The manufacturer's warranty is not affected by this disclaimer of warranties by dealer.

IF USED VEHICLE SALE OR LEASE-CHECK APPROPRIATE BOX
☐ This vehicle is sold/leased "as is" and dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.
OR
☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

ALL USED VEHICLE SALES-DEALER'S OBLIGATION
The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

__/__/__ Date X ______ Customer's Signature

WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)
The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price (if a sale) if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

__/__/__ Date X ______ Customer's Signature

TRADE-IN DESCRIPTION AND ALLOWANCE
Year ______ Make ______ Model ______
Serial No. ______ Mileage ______
Trade-in Value ______ Date of ______
Less Balance Owed ______
Net Trade-in Allowance NONE
Balance Owed to: ______
Address: ______
Account No.: ______
Info. From ______ Good Thru ______
Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X [signature] Customer's Signature 04/26/06 Date

**AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.**
The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims, that may arise out of or relating to the purchase or lease identified in this Motor Vehicle Retail Order and the financing thereof. By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes. New Jersey Consumer Fraud Act, Used Car Lemon Law, and Truth-in-Lending claims are just three examples of the various types of claims subject to arbitration under this agreement. The parties also agree to waive any right to pursue any such claims including statutory, state or federal claims, as a class action. There are no limitations on the type of claims that must be arbitrated, except for New Car Lemon Law and Magnuson-Moss Warranty Act claims which are excluded from arbitration under this agreement. The arbitration shall be conducted in accordance with the Rules of the American Arbitration Association before a single arbitrator. The Costs included in the arbitration process shall be shared as provided by the Association's Rules. The arbitration shall take place in New Jersey at the address of the dealership listed on the Retail Order Form. The decision of the arbitrator shall be binding upon the parties. Any further relief sought by either party will be subject to the decision of the arbitrator. **THIS ARBITRATION PROVISION**

Ex 1a

| | | | |
|---|---|---|---|
| ADDITIONAL TAX | | | |
| Deposit | | | |
| BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT, DUE DEALER ON DELIVERY | | | |
| BALANCE DUE | | | |

Account No. ___ Good Thru ___

Info. From ___

Customer certifies that the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X ___ Customer's Signature ___ / / Date

**AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.**

The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims, that may arise out of or relating to the purchase or lease identified in this Motor Vehicle Retail Order and the financing thereof. By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes. New Jersey Consumer Fraud Act, Used Car Lemon Law, and Truth in-Lending claims are just three examples of the various types of claims subject to arbitration under this agreement. The parties also agree to waive any right to pursue any such claims including statutory, state or federal claims, as a class action. There are no limitations on the type of claims that must be arbitrated, except for New Car Lemon Law and Magnuson-Moss Warranty Act claims which are excluded from arbitration under this agreement. The arbitration shall be conducted in accordance with the Rules of the American Arbitration Association before a single arbitrator. The Costs included in the arbitration process shall be shared as provided by the Association's Rules. The arbitration shall take place in New Jersey at the address of the dealership listed on the Retail Order Form. The decision of the arbitrator shall be binding upon the parties. Any further relief sought by either party will be subject to the decision of the arbitrator. **THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION AND HAVE A JURY TRIAL. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.**

Accepted By: ___ Date ___ X Dealer or His Authorized Representative ___ 04/ /2006 Date X ___ Customer's Signature

Customer agrees that this Order on the face and on the reverse side and any attachments to it includes all the terms and conditions, if a sale. Customer further agrees this Order cancels and supersedes any prior agreements and as of the date signed by Dealer or authorized agent, comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer. If Customer, prior to delivery, elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the order. **YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC PRE-DELIVERY SERVICE WHICH IS TO BE PERFORMED. THE AUTOMOTIVE DEALER MAY NOT CHARGE FOR PRE-DELIVERY SERVICES FOR WHICH THE AUTOMOTIVE DEALER IS REIMBURSED BY THE MANUFACTURER. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC DOCUMENTARY SERVICE WHICH IS TO BE PERFORMED.** I am 18 years of age or older and of full legal capacity to enter into this contract.

Accepted By: ___ Date ___ X Dealer or His Authorized Representative ___ Date X ___ Customer's Signature

THIS ORDER NOT SUBJECT TO CANCELLATION — DEPOSIT NON-REFUNDABLE

**IMPORTANT: READ THE TERMS AND CONDITIONS ON BACK OF THIS ORDER BEFORE SIGNING.**

Date Invoice

Ex 1. b

# Höegh Autoliners AS (Enterprise No. 933090628) BILL OF LADING

| | |
|---|---|
| SHIPPER-EXPORTER (COMPLETE NAME AND ADDRESS)<br>AMERICAN EXPORT LINES<br>169 FRELINGHUYSEN AVENUE<br>NEWARK, NJ 07114<br>TEL: 973-824-2333 | BOOKING NO.<br>102279<br>EXPORT REFERENCES<br>Shippers Ref: 208878 |
| CONSIGNEE (COMPLETE NAME AND ADDRESS)<br>OLABISI FATUROTI SALIS<br>C/O FORECAST AUTOS 58<br>SOMOLU, LAGOS NIGERIA | FORWARDING AGENT, FMC NO. F.M.C.: 00000<br>NO FORWARDER USED ON THIS B/L<br>POINT AND COUNTRY OF ORIGIN OF GOODS |
| NOTIFY PARTY (COMPLETE NAME AND ADDRESS)<br>SAME AS CONSIGNEE<br>Ml 17743 gg | ALSO NOTIFY — ROUTING & INSTRUCTIONS<br>USED UNITS-VARIOUS EXCEPTIONS<br>AS PER SURVEY REPORT<br>CARRIER NOT RESPONSIBLE IF<br>PERSONAL EFFECTS PRESENT<br>27/5/06 |
| PRE CARRIAGE BY / PLACE OF RECEIPT BY PRE CARRIER | |
| EXPORTING VESSEL: MORNING DEW FLAG 3 / PORT OF LOADING: NEW YORK | LOADING PIER TERMINAL |
| PORT OF DISCHARGE: LAGOS PORT COMPLEX / PLACE OF DELIVERY BY ON CARRIER | TYPE OF MOVE |

PARTICULARS FURNISHED BY SHIPPER

| MRKS & NOS. CONTAINER NOS | NO. OF PKGS | HM | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|---|
| | | | FREIGHT PRE-PAID | | |
| | | | 1 2006 SUNNYBROOK TT<br>DIMS: 412 X 100 X 132<br>AES: 223226283<br>XTN: AES-208878<br>V.I.N.: 4UBAS0R2361D73648 | 16000LB<br>(7258) | 3147CF<br>(89.11) |
| Deliver to TACOD OCEANAIR FREIGHT LTD | | | TACOD OCEANAIR FREIGHT LTD<br>3, ADEBAYO MOKUOLU ST. ANTHONY VILLAGE LAGOS | | |

ON BOARD: 05/19/06 SIGNATURE:

(TO BE FILLED IN IF PARTIES WISH TO INCREASE CARRIER'S LIABILITY ABOVE US$500 PER PACKAGE OR CUSTOMARY FREIGHT UNIT) IN CONSIDERATION OF ANY ADDITIONAL FREIGHT PAYMENT OF THE CARRIER'S LIMIT OF LIABILITY WILL BE RAISED TO PER PACKAGE OR CUSTOMARY FREIGHT UNIT. IN NO EVENT SHALL THE CARRIER BE LIABLE FOR MORE THAN THE AMOUNT OF THE DAMAGE ACTUALLY SUSTAINED.

FREIGHT PAYABLE AT/BY: JERICHO, NEW YORK

"CARRIER'S LIMITATION OF LIABILITY — TO APPLY WHEN GOODS ARE SHIPPED TO OR FROM A PORT IN THE UNITED STATES.

The parties agree that the US$ 500 shall apply to each container, or other package shipped, or in the case of unboxed vehicles, per freight unit charged for each vehicle. In the event goods are not shipped in packages, the Carrier's liability will be limited to US$ 500 for each customary freight unit. Unless a higher valuation is declared in the space above and the higher freight is paid, each Carrier's liability will be limited to US$ 500 for each such package or customary freight unit."

GOODS SHIPPED on board the vessel in apparent good order and condition, weight, measure, marks & numbers, quality, contents and value unknown unless specified herein, for carriage to the port of destination or so near thereto as the vessel may safely get and lie always afloat, to be delivered in the like good order and condition at the afore said port to Consignees or their Assigns. Freight as per note on the margin plus other charges incurred in accordance with the provisions in this Bill of Lading — unless prepaid — to be paid by Consignees or their Assigns.

In accepting this Bill of Lading the Merchant expressly accepts and agrees to all it's stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.
One original Bill of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.

IN WITNESS whereof the Carrier or agent has signed (3) three Bills of Lading all of this tenor and date, one of which being accomplished, the other(s) to stand void.

Höegh Autoliners Inc.
As Agents for Höegh Autoliners AS, Carrier

By

FREIGHT PREPAID

| Mo. Day Yr. | B/L No. |
|---|---|
| 05/19/06 | 133 |

Date issued

ORIGINAL

| FREIGHT PARTICULARS | RATE | PER | |
|---|---|---|---|
| | | | |
| TOTAL FREIGHT | | | |

Ex 2a

# Höegh Autoliners AS Bill of Lading

1 DEFINITIONS: «Merchant» includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to the possession of the cargo, and anyone acting on behalf of any such person(s). «Carrier» is Höegh Autoliners AS of Oslo, Norway (Enterprise No 933066621).

2 PARAMOUNT CLAUSE

A) The rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading, signed in Brussels on 25th August 1924 (hereinafter the «Hague Rules») as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipment to which no such enactments are compulsorily applicable, the terms of the said convention shall apply.

B) In trades where the Hague Rules as amended by the Protocol signed in Brussels on 23rd February 1968 (hereinafter the «Hague - Visby Rules») apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in charge of another carrier, and to deck cargo.

C) Notwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from the United States, this Bill of Lading shall have effect subject only to the provisions of the United States Carriage of Goods by Sea Act, approved April 16, 1936 (hereinafter the «US COGSA»), which shall supersede all other acts, statutes, conventions and treaties and which shall, alone, be deemed incorporated herein.

D) Notwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from Canada, this Bill of Lading shall have effect subject only to the provisions of the Canada Marine Liability Act, 2001 (hereinafter the «Canada Marine Liability Act»), which shall supersede all other acts, statutes, conventions and treaties and which shall, alone, be deemed incorporated herein.

JURISDICTION AND GOVERNING LAW. Any claim or dispute arising under or in connection with this Bill of Lading (whether in contract, tort or otherwise) shall be referred to and decided by Oslo City Court, Norway and, if any appeals are taken, by the appellate courts of Norway and shall be governed by Norwegian law, except as provided elsewhere in this Bill of Lading.

4 PERIOD OF RESPONSIBILITY. The Carrier or its agent shall not be liable for loss of, damage to or delay of the goods during the period before loading and after discharge from the vessel, howsoever, or in whatsoever manner such loss, damage or delay arises.

5 INDIRECT DAMAGE, DELAY AND MISDELIVERY, TIME BAR

A) The Carrier shall in no circumstances be responsible for indirect or consequential loss or damage caused through misdelivery, delay or physical loss of or damage to the goods.

B) Any claim for delivery of the goods to the wrong person shall be subject to a time limitation of one year from the date of delivery.

6 THE SCOPE OF VOYAGE. The intended voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose including maintenance or repair of the vessel and/or illness, injury, training or replacement of any members of the crew.

7 SUBSTITUTION AND TRANSHIPMENT

A) The Carrier shall be entitled but not obliged to substitute any vessel or other means of transport and to subcontract on any terms which are reasonable in the circumstances the whole or any part of the carriage and the duties undertaken by the Carrier in relation to the goods.

B) If the Carrier substitutes another vessel or means of transport for the goods, the Carrier's responsibility shall be limited to the part of the transport performed in its own vessel and the Carrier shall not be liable in respect of other parts of the transport even if all freight has been collected by it.

C) The Carriage by any transshipping or forwarding Carrier and all transshipment or forwarding shall be subject to the terms of the regular form of the Bill of Lading, Freight Note or other Contract or Shipping document used at the time by such transshipping or forwarding Carrier, whether issued for the goods or not, and even though such terms may be less favourable to the Merchant than the terms of this Bill of Lading. If it be adjudged that the Carrier shall be responsible for the cargo during such transshipment or forwarding, the Carrier's responsibility and/or liability for any loss, damage or delay shall be determined in accordance with and shall not exceed the following:

(1) If by road, in accordance with the Convention on the International Carriage of Goods by Road (CMR), dated May 19, 1956.

(2) If by rail, in accordance with the Convention concerning International Carriage by Rail (COTIF), dated May 9, 1980, and Carrier's responsibility shall be contingent upon it be proved that loss of or damage to the goods were caused through the negligent acts or omissions by the Carrier or any of its servants.

D) With respect to overland transportation in the USA, the terms and conditions of the Uniform I.C.C. Bill of Lading, when applicable, shall also apply together with the underlying Carrier's tariff, which shall be deemed to be incorporated herein as if set forth at length. The liability of the Carrier for losses occurring during land transport shall under no circumstances be greater than that of such underlying carrier.

8. OPTIONAL STOWAGE, UNITIZATION:

A) Goods may be stowed by the Carrier as and when received.

B) Any containers, whether stowed by the Carrier or received by it in a stowed condition from the Merchant, may be carried on or under deck without notice to the Merchant.

9 LIABILITY FOR DECK CARGO. Deck cargo shall be carried subject to all permissible exceptions under the Hague Rules, the Hague - Visby Rules, US COGSA and/or Canada Marine Liability Act as may be applicable under Clause 2.

10 NOTICE OF LOSS OR DAMAGE, LIMITATION OF ACTIONS. Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge (or place of delivery as applicable) before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in this Bill of Lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery.

Notice of any loss or damage shall be addressed to Carrier's local agent at port of discharge and to Carrier's general U.S. agents, Höegh Autoliners Inc., 500 N. Broadway, Jericho, New York 11753, U.S.A., Fax No. 1+ (1) 516 935-2604.

11 UNIT LIMITATION OF RESPONSIBILITY. One vehicle shall be considered one freight unit. If goods are shipped in a container, such container shall be considered one unit.

Neither the Carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $ 500 lawful money of the United States of America per package (unit), or in case of goods not shipped in packages per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the Shipper before shipment and inserted in the Bill of Lading. This declaration, if embodied in the Bill of Lading, shall be prima facie evidence, but shall not be conclusive on the Carrier.

By agreement between the Carrier, Master or agent of the Carrier, and the shipper another maximum amount than that mentioned in the preceding paragraph may be fixed, PROVIDED, that such maximum shall not be less than the figure above named. In no event shall the Carrier be liable for more than the amount of damage actually sustained. Neither the Carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the Bill of Lading.

12 LIABILITY OF SERVANTS, AGENTS AND SUB-CONTRACTORS OF THE CARRIER

It is hereby expressly agreed that no servant, agent or sub-contractor of the Carrier, shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under the contract of carriage evidenced by this Bill of Lading for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his or their part while acting in the course of or in connection with his or their employment.

The Merchant undertakes that no claim shall be made against any servant, agent or sub-contractor of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.

13 HIMALAYA CLAUSE. DEFENCES AND LIMITS OF LIABILITY FOR THE CARRIER, SERVANTS, AGENTS AND SUB-CONTRACTORS OF THE CARRIER

Without prejudice to the generality of the foregoing provisions, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled shall also be available and shall extend to protect every such servant, agent or sub-contractor of the Carrier acting as aforesaid.

For the purpose of the foregoing provision of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants, agents or sub-contractors from time to time and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.

The terms «agents», «servants» and «sub-contractors» shall include independent agents, servants and sub-contractors and shall include agents, servants and sub-contractors employed both directly and indirectly by the Carrier and shall also include the agent, servant or s[illegible] own sub-agents and sub-contractors. It is hereby expressly agreed that vessel ow[illegible] vessel not owned by Carrier), bareboat charterers (in case vessel not bareboat chartered by Carrier), technical and commercial managers, employment agencies, Master and crew that perform any of the Carrier's obligations under this Bill of Lading shall be regarded as sub-contractors of the Carrier.

14 GOVERNMENT DIRECTIONS, WAR, EPIDEMICS, ICE, STRIKES, ETC.

A) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.

B) Should it appear that the performance of the transport would expose the vessel or any goods onboard to the risk of seizure or damage or delay, resulting from war, war like operations, blockade, riots, civil commotions or piracy, or any person onboard to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.

C) Should it appear that epidemics, quarantine, ice, labour troubles, labour obstructions, strikes, lock outs, any of which onboard or on shore, or difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and leaving again, all of which safely and without delay, the Master may discharge the cargo at port of loading or any other safe and convenient port.

D) The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfilment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight if any and a reasonable compensation for any extra services rendered to the goods.

E) If any situation referred to in this clause may be anticipated, or if for any such reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract before the Bill of Lading is issued.

F) The Merchant shall be informed if possible.

G) If at any time upon or after the commencement of the voyage, in the sole opinion of the Master and/or Carrier, it is impracticable, impossible, unsafe and/or dangerous for the vessel, her officers and crew and/or cargo to call at port(s) of discharge through the Suez or Panama canal(s) or Strait of Hormuz due to closure or threatened closure to navigation by any authority exercising legal or illegal control over the area of the canal/strait the Carrier shall not be liable to proceed further on the voyage by any other route(s) available to navigation, and shall be entitled in any of the above cases at its sole discretion to act according to the principles laid down in (B) above.

If the vessel is being trapped in the Suez/Panama canal(s) or in the Arabian Gulf due to the closure of the Strait of Hormuz or in any other navigable waters in connection with the voyage and such trapping lasts for 10 days or more from the moment the vessel is being trapped, the voyage shall be regarded as frustrated and the cargo to be deemed to have been placed under the Merchant's custody and the Carrier/Vessel to be under no further or responsibility whatsoever for the cargo if possible the vessel to discharge the cargo at the nearest available port according to the principles laid down in (B) above.

15. LOADING, DISCHARGING AND STORING. Loading, discharging and delivery of the cargo shall be arranged by the Carrier's agent, unless otherwise agreed. Storing and delivery shall be for the Merchant's account. Loading and discharging may commence without previous notice. The Merchant or his Assign shall tender the goods when the vessel is ready to load and as fast as the vessel can receive and – but only if required by the Carrier – also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the vessel may leave the port without further notice and deadfreight is to be paid. The Merchant or his Assign shall take delivery of the goods and continue to receive the goods as fast as the vessel can deliver and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge to be deemed a true fulfilment of the contract. If the goods are not applied within a reasonable time, the Carrier may sell the same privately or by auction. The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above. The Merchant shall be under the obligation to take delivery of damaged cargo and shall accept his reasonable proportion of unidentified loose cargo.

16. LIGHTERAGE. Any lightering in or off ports of loading or ports of discharge to be for the account of the Merchant.

17 FREIGHT AND CHARGES

A) Prepayable freight, whether actually paid or not, shall be considered as fully earned upon loading and non-returnable in any event. The Carrier's claim for any charges under this contract shall be considered definitely payable in like manner as soon as the charges have been incurred. Interest at 10 per cent, shall run from the date when freight and charges are due.

B) The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighing onboard and expenses incurred in repairing damage to and replacing of packing due to excepted causes and for all expenses caused by extra handling of the cargo for the aforementioned reasons.

C) Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the vessel shall be paid by the Merchant. If paid by the Carrier, any such charge shall be refunded by the Merchant.

D) The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.

E) The Carrier is entitled in case of incorrect declaration of content, weights, measurements or value of the goods to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the contents inspected and the weight, measurement or value verified.

F) Full freight shall be paid on damaged or unsound goods.

G) Goods once shipped cannot be taken back except upon Carrier's consent and payment of full freight and any extra expenses.

H) If the currency in which freight and charges are quoted is devalued between the date of freight agreement and the date of actual payment, then the amount payable shall be increased in proportion.

18 LIEN. The Carrier shall have a lien on the goods for any amount due under this contract and costs of recovering same and shall be entitled to sell the goods privately or by auction to cover any claims. The Carrier's lien shall continue notwithstanding delivery of the goods.

19. GENERAL AVERAGE. General Average shall be settled according to York - Antwerp Rules of 1994 and be adjusted at any port or place by one or more General Average adjuster(s) in the Carrier's choice. The Merchant shall contribute and/or receive contributions in General Average for all goods shipped under this Bill of Lading. The Merchant shall be personally liable in respect of contribution whether or not average bond or other security has been demanded. Such security, including a cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be submitted to the Carrier prior to delivery of the goods.

20 GENERAL AVERAGE – BELGIUM'S COMMERCIAL CODE. The Merchant by accepting this Bill of Lading expressly waives and renounces Part II Article 148 of the Belgian Commercial Code and agrees that damage to and expenses and sacrifices incurred by the vessel even if caused by the inherent vice or unseaworthiness of the vessel, or by fault or neglect of the Master or Crew, shall be considered as matters of General Average and shall be contributed to by Merchant accordingly.

21 NEW JASON CLAUSE AND BOTH TO BLAME COLLISION CLAUSE. New Jason Clause and Both to Blame Collision Clause as adopted by the Baltic and International Maritime Conference are hereby incorporated herein and shall remain in effect even if unenforceable in the United States of America.

22 FIRE. Neither the Carrier nor its terminal operator, stevedore, servant or agent, shall be liable to answer for or make good any loss or damage to goods occurring at any time and even though before loading on or after discharge from the vessel, by reason or by means of any fire whatsoever, unless such fire shall be caused by their personal design or neglect.

23. The terms of this Bill of Lading shall be separab[illegible]d if any provision hereof, or any part of any provision be held to be invalid or unenforceable, such hol[illegible] shall not affect the validity or enforceability of any other provision or part thereof in this Bill of Lading.

Ex 26

Salis
Please see below message from the shipping line. We have done all we can you need to do something before Monday March 19 or your unit will be abandoned
angela

**From:** Harry Hussein [mailto:Harry.Hussein@hoegh.com]
**Sent:** Wednesday, March 14, 2007 4:48 PM
**To:** Lisa Scalora
**Cc:** James Perduto
**Subject:** RE: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218
**Importance:** High

Ali, Lisa

(6) Defs refused to let Plf know of what they discussed in discovery (Frustration of Justice)

Despite my brief chat with your office last week I still haven't received anything for either of you in writing regarding the freight settlement for this unit

PLEASE urgently advise what is going on as if we do not hear back form you by our opening Monday March 19th we will be left with no alternative but to conclude the unit has been abandoned and thus we will have to dispose of it in order to recover the outstanding freight and fees due.

Thanking you in advance for your timely response,

Harry Hussein
General Manager Mid-Atlantic
Hoegh Autoliners Inc.

Tel : 410 - 354 - 8041

Fax : 410 - 354 - 4530

Email : harry.hussein@hoegh.com

(5) Defs threat to sell the Camper. The Plf do not know where the camper is now and was not informed of status — whether disposed or not & Agent in Lagos did not inform.

Harry Hussein/LHC

03/09/2007 09:36 AM

To "Lisa Scalora" <ael@verizon.net>
cc jperduto@huai na.com
Subject RE: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218Link

Ali,

We really need to put this one to rest - Do you have an update on what is going on ???

By the way as I'm sure you realize this unit is accruing storage charges daily and if the consignee is not going to pick up the unit we need to advise our agent prior to the port authority claiming the unit as being abandoned !!

Thank you,

Harry Hussein
General Manager Mid-Atlantic
Hoegh Autoliners Inc.

Tel : 410 - 354 - 8041

Fax : 410 - 354 - 4530

Email : harry.hussein@hoegh.com

(4) ACL was informed it is not my fault.

-----Harry Hussein/LHC wrote: -----

To: "Lisa Scalora" <ael@verizon.net>
From: Harry Hussein/LHC
Date: 02/26/2007 08:53AM
cc: jperduto@huai na.com
Subject: RE: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218

Ali,

Below received from our agent in Lagos , which is very, very disappointing as was under the impression, based on your advice, that the consignee was going to accept this charge ??

Please note that should the consignee not accept to pay the fees due we will have no option but to advise our agent in Lagos to dispose of the unit in order to recover our expenses

===============================================

Dear Mr Hussein

Receiver has refused to pay this amount claiming that it was not his fault that the cargo was not discharged in Lagos (3)

After informing their agent, Hoegh was informed it is not my fault but theirs.

Maxy Chukwurah
Import Documentation Manager
Cross Marine Services Ltd
Phone # 234-1-5871375, 08039756680, 01-4369665

Ex. 3a

==================================================

Best regards,

Harry Hussein
General Manager Mid-Atlantic
Hoegh Autoliners Inc

Tel : 410 - 354 - 8041

Fax : 410 - 354 - 4530

Email : harry.hussein@hoegh.com

"Lisa Scalora" <ael@verizon.net>

**"Lisa Scalora" <ael@verizon.net>**

02/21/2007 02:28 PM

To: "Harry Hussein" <Harry.Hussein@hoegh.com>
cc: <jperduto@.hual.na.com>
Subject: RE: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218

Harry,

We are in receipt of your email and will await your response

Regards,

Lisa Scalora
American Export Lines

---

**From:** Harry Hussein [mailto:Harry.Hussein@hoegh.com]
**Sent:** Wednesday, February 21, 2007 2:23 PM
**To:** ael@verizon.net
**Cc:** jperduto@.hual.na.com
**Subject:** Fw: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218
**Importance:** High

Ali,

Further to our telecom earlier today I have just sent below message to our agent in Lagos

Will advise as / when we receive their response / comments
By the way for sake of good order please kindly confirm receipt of this message

Thank you and best regards,

Harry Hussein
General Manager Mid-Atlantic
Hoegh Autoliners Inc

Tel : 410 - 354 - 8041

Fax : 410 - 354 - 4530

Email : harry.hussein@hoegh.com

(2) Ali (ACL) was informed of the demand

----- Forwarded by Harry Hussein/LHC on 02/21/2007 02:21PM -----
To: Alrainelagos claims <Alrainelagos.claims@ng.dti.bollore.com>
From: Harry Hussein/LHC
Date: 02/21/2007 02:18PM
cc: Andrew Pirreca <Andrew.Pirreca@hoegh.com>, "Alrainelagos claims" <Alrainelagos.claims@ng.dti.bollore.com>, "Carol Graham" <carol.graham@hoegh.com>, Christina.Silva@hoegh.com, "dbravata@.hual.na.com" <dbravata@.hual.na.com>, "Dennis Bravata" <Dennis.Bravata@hoegh.com>, "fernanda.desousa@hoegh.com" <fernanda.desousa@hoegh.com>, Jack Dagnese <Jack.Dagnese@hoegh.com>, "jdagnese@.hual.na.com" <jdagnese@.hual.na.com>, "Maxy Chukwurah" <Maxy.Chukwurah@ng.dti.bollore.com>, philippe jarry <philippe.jarry@ng.dti.bollore.com>, "schen@.hual.na.com" <schen@.hual.na.com>, "Stephen Stretz" <Stephen.Stretz@hoegh.com>, jperduto@.hual.na.com
Subject: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218
Mr. Mba. Maxy,

Please be advised that you are requested, on our behalf, to advise consignee that upon payment of USD 7,630.00 the cargo can be released to him.
Kindly advise consignee's response and when funds collected, which please credit to Hoegh Oslo's account

(1) Demand and Threat to sell

Any questions please feel free to contact me.

Best regards,

Harry Hussein
General Manager Mid-Atlantic
Hoegh Autoliners Inc.

Ex. 3b.

From: Harry Hussein/LHC
Date: 02/21/2007 02:18PM
cc: Andrew Pirreca <Andrew.Pirreca@hoegh.com>, "Alrainelagos claims" <Alrainelagos.claims@ng.dti.bollore.com>, "Carol Graham" <carol.graham@hoegh.com>, Christina.Silva@hoegh.com, "dbravata@hualna.com" <dbravata@hualna.com>, "Dennis Bravata" <Dennis.Bravata@hoegh.com>, "fernanda.desousa@hoegh.com" <fernanda.desousa@hoegh.com>, Jack Dagnese <Jack.Dagnese@hoegh.com>, "jdagnese@hualna.com" <jdagnese@hualna.com>, "Maxy Chukwurah" <Maxy.Chukwurah@ng.dti.bollore.com>, philippe jarry <philippe.jarry@ng.dti.bollore.com>, "schen@hualna.com" <schen@hualna.com>, "Stephen Stretz" <Stephen.Stretz@hoegh.com>, jperduto@hualna.com
Subject: Re: Fw: Sunnybrook Camper Trailer on the Trapper V.218

Mr. Mba, Maxy,

Please be advised that you are requested, on our behalf, to advise consignee that upon payment of USD 7,630.00 the cargo can be released to him.
Kindly advise consignee's response and when funds collected, which please credit to Hoegh Oslo's account.

Any questions please feel free to contact me.

Best regards,


Harry Hussein
General Manager Mid-Atlantic
Höegh Autoliners Inc.

Tel : 410 - 354 - 8041

Fax : 410 - 354 - 4530

Email : harry.hussein@hoegh.com


Ex 3. C

# DOCK RECEIPT

| (1) SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | (5) BOOKING NO / (5A) BILL OF LADING NO. / (6) EXPORT REFERENCES |
|---|---|
| AMERICAN EXPORT LINES AS AGENT FOR OLABISI FATUROTI 42 BROADWAY RM1133 NEWYORK, NY 10004 | (5) 101086 / (5A) AEL208129-01 / (6) VIN#WU002823 AEL208129 |
| (2) CONSIGNEE (COMPLETE NAME AND ADDRESS) OLABISI FATUROTI SALIS C/O FORECAST AUTOS 58 BAGULAYE ROAD SOLOMON LAGOS NIGERIA TEL:08033483997 | (7) FORWARDING AGENT / REFERENCE NO. AMERICAN EXPORT LINES 169 FRELINGHUYSEN AVENUE NEWARK, NJ 07114-0000 TEL:973-824-2333 |
| | (8) POINT AND COUNTRY OF ORIGIN NY , US |
| NOTIFY PARTY OLABISI FATUROTI SALIS C/O FORECAST AUTOS 58 BAGULAYE ROAD SOLOMON LAGOS NIGERIA TEL:08033483997 | (9) ALSO NOTIFY - ROUTING INSTRUCTIONS NDR FTSR 30.55H |

| (12) INITIAL CARRIAGE BY (MODE) | (13) PLACE OF INITIAL RECEIPT | (9A) FINAL DESTINATION (OF THE GOODS NOT THE SHIP) |
|---|---|---|
| | | NIGERIA |
| (14) VESSEL VOY FLAG | (15) PORT OF LOADING | (10) LOADING TERMINAL / (10A) ORIGINAL(S) TO BE RELEASED AT |
| HUAL TRANSPORTER V54 | NEW YORK | N.E.MARINE TERM 403 PORT JER |
| (16) PORT OF DISCHARGE | (17) PLACE OF DELIVERY BY ON-CARRIER | (11) TYPE OF MOVE (IF MIXED, USE BLOCK 20 AS APPROPRIATE) |
| LAGOS NG | LAGOS NG | RO/RO |

| MKS. & NOS./CONT. NOS. (18) | NO. OF PKGS. (19) | DESCRIPTION OF PACKAGES AND GOODS in Schedule B detail — DOCK RECEIPT (20) | GROSS WEIGHT (21) | MEASUREMENT (22) |
|---|---|---|---|---|
| AS ADDRESSED | 1 | SELF PROPELLED USED VEHICLE 1998 TOYOTA SIENNA VIN#4T3ZF13C0WU002823 ---------------------------- FREIGHT PREPAID | 2921LBS | 417CFT |

HOEGH Cargo Receiving Check Survey & Search — YES NO — Radio, Cassette, CD Player, Title, Factory New Unit, Comments, HOEGH CARGO Class

FOR EMERGENCY CALL (973) 824-2333

DELIVER BY:

LIGHTER:
TRUCK:
ARRIVED: DATE ______ TIME ______
UNLOADED: DATE ______ TIME ______
CHECKED BY: ______
PLACED: IN SHIP ON DOCK
LOCATION ______

RECEIVED THE ABOVE DESCRIBED GOODS OR PACKAGES SUBJECT SUBJECT TO ALL THE TERMS OF THE UNDERSIGNED'S REGULAR FORM OF DOCK RECEIPT AND BILL OF LADING WHICH SHALL CONSTITUTE THE CONTRACT UNDER WHICH THE GOODS ARE RECEIVED. COPIES OF WHICH ARE AVAILABLE FROM THE CARRIER ON REQUEST AND MAY BE INSPECTED AT ANY OF ITS OFFICES.

FOR THE MASTER: ______

DATE: 2/20/07

Ex 3d.