UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
OLABISI SALIS                          :
                                       :     07 Civ 5949
              Plaintiff,               :
                                       :     **DECISION AND ORDER**
     - against -                       :
                                       :
AMERICAN EXPORT LINES AND              :
HOEGH AUTOLINERS INC.,                 :
                                       :
              Defendants.              :
------------------------------------X

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 4-30-08

**VICTOR MARRERO, United States District Judge.**

Plaintiff Olabisi Salis ("Salis") brought this action against defendants American Export Lines ("AEL") and Hoegh Autoliners Inc. ("Hoegh") (collectively, "Defendants") seeking damages arising out the alleged non-delivery of a used 2006 Sunnybrook Motorhome (the "Camper") to Lagos, Nigeria from the United States. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). Hoegh argues that the forum selection clause in its bill of lading, dated May 19, 2006 (the "Bill of Lading") should be enforced, or in the alternative, that its liability is limited to 500 dollars pursuant to the United States Carriage of Goods by Sea Act, 46 U.S.C. § 30701 ("COGSA"). AEL argues that its liability is limited to 50 dollars pursuant to the terms and conditions set forth in its invoice to Salis, dated April 28, 2006 (the "Invoice"). For the reasons discussed below, Defendants' motions for summary judgment are GRANTED.

1

## I. BACKGROUND[1]

Salis is in the business of buying vehicles, including campers, in the State of New York and shipping those vehicles to Nigeria for resale. Beginning in or about March 2006, Salis hired AEL, a New Jersey based company, as a freight forwarder[2] to arrange for the shipment of vehicles from the United States to Nigeria. Since March 2006, AEL has arranged for the shipment of about 159 vehicles for Salis.

On or before April 28, 2006, Salis negotiated with AEL an agreement (the "Agreement") to ship two campers (the "Vehicles") from a port of loading in New York (the "Port") to Lagos, Nigeria. That same day, AEL issued to Salis the Invoice, which contained terms and conditions, including a disclaimer limiting AEL's liability (the "Disclaimer"). The

---

[1] The factual summary that follows derives primarily from the Amended Complaint, dated November 30, 2007; AEL's Amended Answer, dated December 18, 2008; AEL's Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment, dated February 6, 2008 ("AEL's Mem."); Declaration of Lisa Scalora, dated December 18, 2007; Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Opp'n"), dated January 31, 2008; Dock Receipt, dated April 28, 2006, attached as Ex. 3(d) to Pl.'s Opp'n. ("Dock Receipt"); Hoegh's Reply Memorandum of Law In Support of its Motion, dated February 5, 2008; and Declaration by Barbara J. Lauth, dated January 2008 ("Lauth Decl."). Except where specifically referenced, no further citation to these sources will be made.

[2] "An ocean freight forwarder is an entity that arranges transportation of goods on behalf of a shipper from a United States location to an overseas location. The freight forwarder, acting as the shipper's agent, takes delivery of the goods, routes them to their destination, prepares documentation, arranges for any necessary storage, and completes any other tasks relating to the movement of the goods." U.S. v. Ventura, 724 F.2d 305, 306 (2d Cir. 1983)

Disclaimer stated, in relevant part, that:

> (d) In the absence of additional coverage ..., the Company's liability shall be limited to the following: (i) where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or (ii) where the claims arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less.

(Invoice, attached as Ex. 3 to AEL's Mem. § 9.) The Disclaimer also provides that a "[c]ustomer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore ...." (Id.) AEL also offered additional insurance coverage through its website.

In connection with the Agreement, AEL hired Hoegh Autoliners AS ("Hoegh AS"), as the ocean carrier to ship the Vehicles from the Port to Lagos, Nigeria. The Master of the carrying ship (the "Vessel") issued the Dock Receipt to AEL, which in turn provided it to Salis, so that Salis could deliver the Vehicles to the Vessel for loading. On or about May 19, 2006, the Vessel left the Port with the Vehicles on board, and, on behalf of Hoegh AS, Hoegh issued the Bill of Lading addressed to AEL and Salis.

Several weeks later, Salis discovered that the Camper was never delivered to Nigeria, but it remained on the Vessel and

3

was transported to Durban, South Africa.  Salis was informed that the Camper was not released in Nigeria as it could not clear Nigerian Customs  because of the lack of a "Custom Form M," a form required by Nigerian Customs for clearance of certain vehicles.   Sometime thereafter, the Camper was returned to Nigeria by Hoegh, and in February 2007, Salis sought its release to a designated consignee.  Salis alleges that Hoegh refuses to release the Camper.

Hoegh demanded payment of $7630 from Salis for the unplanned carriage of the Camper from Nigeria to Durban, and back to Nigeria.  Salis was informed that if he did not make payment or resolve the dispute with Hoegh the Camper would be deemed abandoned.   Hoegh claims that it is not its responsibility, as the carrier, to ensure that cargo clears customs, but that it is Salis's responsibility, as the shipper, to gain customs clearance.[3]  Salis refused to make payment, claiming that it is Defendants' responsibility to ensure the shipper provides the proper forms for customs clearance.

Currently, the location and condition of the Camper is

---

[3] The Bill of Lading issued by Hoegh states, in pertinent part, that "the Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through non-observance of Custom House and/or export charges."  (Bill of Lading § 17.)   The term "Merchant" includes "the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo, or anyone acting on behalf of such person."  (Id. § 1.)

4

unknown, but Salis presumes that it continues to accrue storage charges in Nigeria. Salis seeks damages for the non-delivery of the Camper to Lagos, Nigeria in the amount of $75,000.

## II. **DISCUSSION**

### A.   LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). The party opposing summary judgment must come forward with materials setting forth specific facts showing

5

that there is a genuine issue of material fact; he cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible.   See Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996).

## B.   THE FORUM SELECTION CLAUSE

The parties agree that the Bill of Lading is subject to COGSA.  COGSA applies to "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade."   COGSA § 13.   "[E]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade" is subject to the provisions of COGSA.   Id.   All state law claims arising under the Bill of Lading are preempted by COGSA.   See GFT U.S.A. Corp. v. M/V Exp. Freedom, No. 93 Civ. 4557, 1995 WL 276193, at *11 (S.D.N.Y. May 11, 1995) ("Congress has clearly preempted state law through COGSA in defining the relationship between ocean carriers and cargo interests."); see also National Auto. Publ'ns, Inc. v. United States Lines, Inc., 486 F. Supp. 1094, 1100 (S.D.N.Y. 1980).

Under COGSA, the Bill of Lading sets forth contractual terms between the parties to a shipment, and the parties are bound by the provisions of the Bill of Lading.   See Southern

6

Pac. Transp. Co. v. Commercial Metals, 456 U.S. 336, 342-43
(1982) ("[E]ach [term] has in effect the force of statute of
which all affected must take notice."); Givaudan Delawanna v.
Blijdendijk, 91 F. Supp. 663, 666 (S.D.N.Y. 1950) ("The
purchase of a bill of lading ordinarily constitutes a
commercial transaction between experienced businessmen or
companies, and they must be held to take with notice of the
provisions of the bill."); see also United Van Lines v.
Hellman, 949 F. Supp. 126, 129 (E.D.N.Y. 1996) ("It is well-
accepted that a bill of lading may not be modified by
extrinsic or parol evidence.").

In the instant matter, the Bill of Lading contains a
forum selection clause (the "Forum Selection Clause")
providing that:

> Any claim or dispute arising under or in connection with
> this Bill of Lading (whether in contract, tort or
> otherwise) shall be referred to and decided by Oslo City
> Court, Norway and, if any appeals are taken, by the
> appellate courts of Norway and shall be governed by
> Norwegian law, except as provided elsewhere in this Bill
> of Lading.

(Bill of Lading § 2.)

Salis argues that the Forum Selection Clause should not
be enforced because it would lessen Hoegh's liability below
what § 3(8) of COGSA ("§ 3(8)") guarantees.    The Court
disagrees.

"COGSA protects the fact and extent of liability, not the

7

means and costs of enforcing that liability. See Stemcor USA v. Hyundai Merch. Marine Co., 386 F. Supp. 2d 229, 232 (S.D.N.Y. 2005) (citing Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 537-39 (1995) ("Sky Reefer")). COGSA § 3(8) states that:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter ... shall be null and void and of no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability.

COGSA § 3(8). However, Salis offers no evidence to substantiate his assertion that enforcement of the Forum Selection Clause would lessen Hoegh's liability. See Stemcor, 386 F. Supp. at 232.

Forum selection clauses are not automatically prohibited by COGSA. See id. The United States Supreme Court, in Sky Reefer, held that a foreign arbitration clause[4] in a bill of lading was enforceable and not prohibited by § 3(8) of COGSA. See 515 U.S. at 537-39. The Supreme Court stated that "[n]othing in [§ 3(8)] ... suggests that [§ 3(8)] prevents the parties from agreeing to enforce these obligations in a

---

[4] Although Sky Reefer involved a foreign arbitration clause, "foreign arbitration clauses are but a subset of foreign forum selection clauses in general...." Sky Reefer, 515 U.S. at 535; see also Stemcor, 386 F. Supp. at 229.

8

particular forum. By its terms, it establishes certain duties and obligations, separate and apart from the mechanisms for their enforcement." Id. at 535. In other words, "procedural impediments that make a plaintiff's recovery in a foreign forum more difficult to achieve do not constitute the lessening [of] liability sufficient under § 3(8) to invalidate a choice of law or choice of forum clause." International Marine Underwriters CU v. M/V Kasif Kalkavan, 989 F. Supp. 498, 499 (S.D.N.Y. 1998) (citing Sky Reefer, 515 U.S. at 534; Mitsui & Co. v. Mira M/V, 111 F.3d 33, 36 (5th Cir. 1997); 3 P.P.D. Int'l Corp. v. M/V Cast Muskox, No. 95 Civ. 4184, 1995 WL 728463 (S.D.N.Y. Dec. 7, 1995)). Therefore, the Court finds that the Forum Selection Clause is not prohibited by COGSA.

The Second Circuit has articulated a four-part test to determine whether a forum selection clause should be enforced. See Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). First, a forum selection clause must be "reasonably communicated to the party resisting enforcement." Id. (citation omitted). Second, a forum selection clause must be classified as "mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so." Id. (citation omitted). Third, "the claims and parties involved in the suit

9

[must be] subject to the forum selection clause." Id. (citation omitted). Fourth, a court must "ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the [Forum Selection Clause] was invalid for such reasons as fraud or overreaching." Id. (citation and quotation marks omitted). Each of these elements will be discussed in turn.

1.   Reasonable Communication

Salis argues that the Forum Selection Clause was not reasonably communicated because: (1) Defendants never explicitly informed Salis about the Forum Selection Clause; and (2) Salis never received the Bill of Lading, which contained the Forum Selection Clause, until after the Vessel containing the Camper left the Port. The Court disagrees.

Defendants gave adequate notice to Salis that the Camper was subject to the Forum Selection Clause. First, at the conference held before the Court on January 25, 2008, Salis's counsel stated that Salis had engaged in repeated transactions with Defendants, and that he was aware of the terms and conditions contained in Hoegh's standardized bills of lading.

Second, the Dock Receipt, signed by AEL as agent for Salis, put Salis on notice that he was subject to the terms and conditions of the Bill of Lading, which included the Forum

10

Selection Clause.    See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 97 (2d Cir. 2007) (stating that "[a]s agent for [the shipper], [the freight forwarder has] the authority to enter into a usual and customary shipping contract....") (citations and quotation marks omitted); see also Ventura, 724 F.2d at 311 ("Recognizing the nature of this relationship, courts have described freight forwarders as agents of the shipper for the purposes of arranging cargo transport....") (citations and quotation marks omitted).    Salis does not dispute that he received the Dock Receipt.

The Dock Receipt states, in relevant part, that the Camper is "subject to all the terms of the undersigned's regular form of dock receipt and bill of lading which shall constitute the contract under which the goods are received, copies of which are available from the carrier on request." (Dock Receipt.)    The Dock Receipt, therefore, gave Salis notice that it incorporated the terms and conditions contained in the Bill of Lading.  See New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 30 (2d Cir. 1997) ("We recognize that maritime contracts may validly incorporate by reference terms from other documents or agreements.    Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in

11

such terms that its identity may be ascertained beyond doubt.") (citations omitted).    Therefore Salis was put on notice that the shipment of the Camper was subject to the terms and conditions contained in the Bill of Lading, including the Forum Selection Clause.    See St. Paul Fire & Marine Ins. Co. v. Hanjin Shipping Co., Ltd., No. 99 Civ. 1791, 2001 WL 196754, at *2 (S.D.N.Y. Feb. 21, 2001); Mack Trucks, Inc. v. Farrell Lines, Inc., No. 89 Civ. 1946, 1990 WL 3926, at *1-2 (S.D.N.Y. Jan. 16, 1990).

The Court is also not persuaded that, since the Bill of Lading was issued after the Vessel sailed, the Forum Selection Clause was not reasonably communicated to Salis.    The incorporation of the Bill of Lading by reference in the Dock Receipt suffices to enforce the Forum Selection Clause against Salis, even if the Bill of Lading did not subsequently issue. See American Home Assurance Co. v. Hapag Lloyd Container Line, No. 03 Civ. 5462, 2004 WL 1616379, at *3 (S.D.N.Y. Aug. 4, 2004) (stating that "'[i]t is not unusual to issue a bill of lading after a carrier has taken possession of cargo[,] and courts have regularly held that this does not prevent parties from being bound by its terms'" (quoting Anvil Knotwear, Inc. v. Crowley Am. Transp., Inc., No. 00 Civ. 3243, 2001 WL 856607, at *2 (S.D.N.Y. July 27, 2001)); see also Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F. Supp.

12

846, 848 (S.D.N.Y. 1965) (stating that "[t]he fact that the bill of lading had not yet been issued did not alter the contractual relationship of the parties").  Salis was put on notice that the shipment of the Camper was subject to the terms and conditions contained in the Bill of Lading upon his receiving the Dock Receipt, which stated, in relevant part, that the Camper was "subject to all the terms of the undersigned's ... bill of lading which shall constitute the contract" and Salis could have requested a copy of the Bill of Lading, which was "available from the carrier on request." (Dock Receipt.); see also American Home, 2004 WL 1616379, at *3.  Accordingly, the Court finds that the Forum Selection Clause was reasonably communicated to Salis.

### 2.    Mandatory or Permissive

The Court finds that the Forum Selection clause is mandatory rather than permissive because it explicitly provides for jurisdiction in a single specific court, Oslo City Court, Norway.  "The general rule in cases containing forum selection clauses is that when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive."   John Boutari and Son, Wines and Spirits, S.A. v. Attiki Imps. and Distribs. Inc., 22 F.3d 51, 52 (2d Cir. 1994) (citations and quotation marks omitted).

13

Here, the language indicates that the parties intended to make jurisdiction in Oslo City Court, Norway exclusive and mandatory.

The Forum Selection Clause states, in relevant part, that "[a]ny claim or dispute arising under or in connection with this Bill of Lading (whether in contract, tort or otherwise) shall be referred to and decided by Oslo City Court, Norway." (Bill of Lading § 2.) The use of the word "shall," although not dispositive, is typically employed in mandatory forum selection clauses. See Wells Fargo Century, Inc. v. Brown, 475 F. Supp. 2d 368, 372 (S.D.N.Y. 2007) (citing Karl Koch Erecting Co., Inc. v. New York Convention Ctr. Dev. Corp., 838 F.2d 656, 659 (2d Cir. 1988); Korean Press Agency, Inc. v. Yonhap News Agency, 421 F. Supp. 2d 775 (S.D.N.Y. 2006)); see also Boutari, 22 F.3d at 53. In addition, the Forum Selection Clause does not contain language that is general or broad enough to contemplate multiple venues. See Boutari, 22 F.3d at 53; see also Citicorp Leasing, Inc. v. United Am. Funding, Inc., No. 03 Civ. 1586, 2004 WL 102761, at *1 (S.D.N.Y. Jan. 21, 2004) (providing an example of a permissive guaranty clause: "[g]uarantor submits to the jurisdiction of the federal and state courts in New York State in any action or proceeding"). Instead, the Forum Selection Clause specifies exclusive jurisdiction and venue in Oslo City Court, Norway.

14

See Boutari, 22 F.3d at 52-53 (finding a forum selection clause mandatory when venue and jurisdiction were specified with mandatory or exclusive language); see also Seward v. Devine, 888 F.2d 957, 962 (2d Cir. 1989). Furthermore, the Forum Selection Clause does not simply confer jurisdiction on a specific court, it also mandates that any claim shall be "referred to and decided by" Oslo City Court, Norway, that any appeals taken be decided by appellate courts of Norway, and that the claim or dispute be governed by Norwegian law. (Bill of Lading § 2.)

Accordingly, the Court finds that the Forum Selection Clause confers mandatory and exclusive jurisdiction for resolution of any claim or dispute arising out of the shipment of the Camper in Oslo City Court, Norway.

### 3.    Application of the Forum Selection Clause

The Court finds that the claims involved in this litigation are subject to the Forum Selection Clause. Salis brought this action against Hoegh seeking damages for Hoegh's non-delivery of the Camper. The parties agree that the Bill of Lading, which contains the Forum Selection Clause, applies to the shipment of the Camper. The Bill of Lading applies to "[a]ny claims or dispute arising under or in connection with this Bill of Lading (whether in contract, tort or otherwise)." (Bill of Lading § 2.)  Therefore, Salis's claim of damages for

15

the non-delivery of the Camper is subject to the Forum Selection Clause.

The Court also finds that the parties involved in this litigation are subject to the Forum Selection Clause. Section 13 of the Bill of Lading contains a clause (the "Himalaya Clause"), which brings all agents of the carrier within the protections afforded in the Bill of Lading. See Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 828 n.8 (2d Cir. 2006) ("The bills of lading include a 'Himalaya Clause,' which protects agents ... to the same extent that the owner is protected."). The Himalaya Clause provides, in relevant part, that "every exemption, limitation ... exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier ... shall also be available and shall extend to protect every such servant, agent or subcontractor of the Carrier as aforesaid."  (Bill of Lading § 13.)

Although Hoegh AS, the carrier, issued the Bill of Lading and Hoegh signed the Bill of Lading as an agent of Hoegh AS, (see Bill of Lading 1; Lauth Decl. ¶ 6), the plain language of the Himalaya Clause indicates an intent to extend all of Hoegh AS's limitations on liability, including the Forum Selection Clause, to its agent Hoegh.  See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 31-32 (2004).  Therefore, the parties involved in this suit are subject to any limitations on liability

16

contained in the Bill of Lading.

Accordingly, the Court finds that the parties and claims involved in this matter are subject to the protections of the Forum Selection Clause.

### 4.  Rebutting the Presumption of Enforceability

The Court finds that Salis has failed to rebut the presumption that the Forum Selection Clause is enforceable. In order to rebut the presumption, Salis must make "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the [Forum Selection Clause] was invalid for such reasons as fraud or overreaching." Phillips, 494 F.3d at 383-84. Salis has not alleged any set of facts demonstrating that the enforcement of the Forum Selection Clause would be unreasonable or unjust, or that it was a result of fraud or a product of overreaching by Defendants. Thus, the Court finds that Salis has not met his burden of rebutting the presumption of enforceability of the Forum Selection Clause.

Therefore, the Court concludes that the Forum Selection Clause is enforceable and that Salis is thereby precluded from bringing suit against Hoegh in this Court. Accordingly, Hoegh's motion for summary judgment is granted. Because Hoegh's motion is granted on the grounds that the forum

17

selection clause is enforceable, the Court will not address the merits of Hoegh's additional defense asserted.

C.    LIMITATION ON AEL'S LIABILITY

Under New York law,[5] when contract language is unambiguous, its plain meaning must be enforced according to its terms. <u>See</u>, <u>e.g.</u>, <u>Postlewaite v. McGraw-Hill, Inc.</u>, 411 F.3d 63, 69 (2d Cir. 2005); <u>Greenfield v. Philles Records, Inc.</u>, 780 N.E.2d 166, 170 (N.Y. 2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.") (citations omitted); <u>W.W.W. Assocs. v. Giancontieri</u>, 566 N.E.2d 639, 642 (N.Y. 1990) ("[W]hen parties set down their agreement in a clear, complete document, their writing should

---

[5] Although the Invoice contains a New Jersey choice-of-law provision, AEL cites exclusively to New York law in its brief. Salis does not object to AEL's defense based on New York Law and Salis cites COGSA to argue that the Disclaimer is unenforceable. However, COGSA, by its terms, governs only carriers, and does not apply to freight forwarders such as AEL. <u>See</u> 46 U.S.C. §§ 30701, 30702; <u>Prima U.S. Inc. v. Panalpina, Inc.</u>, 223 F.3d 126, 130 (2d Cir. 2000); <u>Hoffman-LaRoche, Inc. v. M/V TFL Jefferson</u>, 731 F. Supp. 109, 111 (S.D.N.Y. 1990). Therefore, the Court will apply New York law because the parties rely on it in their briefs and during proceedings. <u>See</u>, <u>e.g.</u>, <u>Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000)("The parties' briefs assume that New York law controls, and such implied consent ... is sufficient to establish choice of law.") (citations and quotations omitted); <u>Walter E. Heller & Co. V. Video Innovations, Inc.</u>, 730 F.2d 50, 52 (2d Cir. 1984) ("[T]he parties to litigation may consent by their conduct to the law to be applied."). Nonetheless, it appears that applying the principles governing contract interpretation under New Jersey Law would result in the same conclusion. See <u>Morgan Home Fashions, Inc. v. UTI, U.S., Inc.</u>, No. Civ.A 03-0772, 2004 WL 1950370, at *3 n.2 (D.N.J. Feb. 9, 2004) (upholding a 50 dollar limitation of liability under New Jersey law in a contract between a shipper and a customs broker, relying, in part, on <u>ABN Amro Verzekerigen BV v. Geologistics Americas, Inc.</u>, 253 F. Supp. 2d 757, 765 (S.D.N.Y. 2003), <u>aff'd</u>, 485 F.3d 85 (2d Cir. 2007), which upheld a 50 dollar limitation of liability for a freight forwarder under New York law).

as a rule be enforced according to its terms."). Here, the Court finds that the Disclaimer is unambiguous, and, therefore, must be enforced according to its plain meaning. The plain language of the Disclaimer limits AEL's liability to either: (1) 50 dollars per shipment or transaction if the claim arises from activities other than those relating to customs brokerage, or (2) 50 dollars per entry or the amount of brokerage fees paid to AEL for the entry, whichever is less, for claims arising from activities relating to Customs business.

The parties disagree on whether the Disclaimer is applicable to the claims at issue here. AEL alleges that Salis's claim is for the non-delivery of the Camper due to the lack of Custom Form M. Salis argues, however, that the damages did not result from the failure of the Camper to clear Nigerian customs but from the refusal of Hoegh to release the Camper. In either case, AEL's liability pursuant to the Disclaimer is at most 50 dollars. First, the plain language of the Disclaimer applies to a claim grounded in the failure of the Camper to clear Nigerian customs, as alleged by AEL. Second, AEL is not liable for any claim that Salis alleges against Hoegh because the Disclaimer also provides, in pertinent part, that AEL "shall only be liable for its negligent acts" and that AEL "shall in no event be liable for

19

the acts of third parties." (Disclaimer.)

However, AEL can limit its liability only in so far as its behavior does not amount to gross negligence. See ABN, 253 F. Supp. 2d at 757 (citing Sommer v. Federal. Signal Corp., 593 N.E.2d 1365 (N.Y. 1992)). Gross negligence, when invoked to void an agreed upon limitation of liability in a commercial contract, must "smack[] of intentional wrongdoing and evince[] a reckless indifference to the rights of others." Id. Here, Salis makes conclusory assertions unsupported by any set facts indicating that AEL acted grossly negligent. The Court does not find sufficient evidence on the record before it from which a rational jury could reasonably determine that AEL acted intentionally or with reckless indifference to Salis's rights with respect to the Camper.

Salis also argues that the Invoice containing the Disclaimer is not the correct invoice for the Agreement to ship the Camper to Nigeria. Salis claims that he prepaid for the shipment, whereas the Invoice states that payment was made on July 31, 2006, approximately three months after the Invoice's issuance on April 28, 2006, and approximately two months after the Vessel departed from the Port on or about May 19, 2006. AEL claims that the explanation for the difference between the date of payment, as stated on the Invoice, and the actual payment date is that Salis had a rolling account with

20

AEL at the time in question.  Nonetheless, Salis admits that
the reference number on the Invoice is the same reference
number on the Dock Receipt, which Salis also admits relates to
the Camper.

Salis further alleges that he was not aware of the 50
dollar limitation of AEL's liability contained in the Invoice
at the time he entered into the Agreement with AEL to ship the
Camper, and therefore that it should not be enforceable.  The
Court disagrees.  A prior course of dealing can "establish a
party's awareness of and consent to intended contractual
terms."  Well Luck Co., Inc. v. F.C. Gerlach & Co., Inc., 421
F. Supp. 2d 533, 540 (E.D.N.Y. 2005) (citing New Moon, 121
F.3d at 31); see also Pervel Indus. v. T M Wallcovering, Inc.,
871 F.2d 7 (2d Cir. 1989).  Specifically, terms repeated in a
number of written confirmations may, over time, become part of
later contracts.   See Pervel, 871 F.2d at 8 (stating that
where a seller "has a well-established custom of sending
purchase order confirmations containing an arbitration clause,
a buyer who has made numerous purchases over a period of time,
receiving in each instance a standard confirmation form which
it either signed and returned or retained without objection,
is bound by the arbitration provision").

Here, Salis does not dispute that Salis and AEL enjoyed
an ongoing commercial relationship beginning in or about March

2006 under which AEL, acting as a freight forwarder, arranged for Salis to ship approximately 159 vehicles to Nigeria. Salis also does not dispute that he received invoices from AEL containing terms and conditions, including disclaimer provisions, applicable to those shipments. AEL asserts by sworn declaration that every invoice it issued to Salis contained standardized terms and conditions and that Salis received and paid the invoices without objecting to the Disclaimer or requesting additional liability coverage. Salis argues that the 50 dollar limitation of liability should not be enforced because the terms and conditions in the Invoice at issue here are different from the terms and conditions in prior invoices he received from AEL. To support his assertion, Salis offers evidence of a prior invoice issued by AEL to Salis, dated March 10, 2006 ("March 2006 Invoice"). (See March 2006 Invoice, attached as exhibit 2 to the Letter from Salis to the Court dated March 7, 2008.) However, the March 2006 Invoice also contains a disclaimer provision stating that AEL's liability is limited to 500 dollars unless Salis purchases additional insurance coverage, and AEL is not liable for acts of third parties. The existence of a disclaimer provision in the March 2006 Invoice is consistent with AEL's claim that all invoices it issued to Salis contained such provisions. In addition, whether the

22

disclaimer provision limits AEL's liability to 50 dollars or 500 dollars, is not a material issue of fact because under either provision Salis fails to meet his burden of establishing jurisdiction in federal court under 28 U.S.C. § 1332 ("§ 1332"). See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (stating that "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant").

Therefore, Salis has not offered any documentary or sworn evidence setting forth specific facts showing that there is a genuine issue of material fact to be tried to defeat AEL's motion for summary judgment, which is properly supported by affidavits and documents. Gottlieb, 84 F.3d at 518. The Court concludes that the weight of the admissible evidence on the record is legally sufficient to establish a course of dealing between the parties that the terms and conditions contained in AEL's invoices are enforceable against Salis. See Well Luck Co., 421 F. Supp. 2d at 540 (stating that "[a]lthough the existence of a prior course of dealing between contracting parties is generally a factual issue, where one party fails to contest the material facts of its prior course of dealing, a court may find that a course of dealing existed as a matter of law") (citing Capitol Converting Equip., Inc. v. LEP Transp., Inc., 965 F.2d 391, 395 (7th Cir. 1992)).

23

Thus, the Court finds that the Disclaimer, which limits AEL's liability to 50 dollars, is enforceable against Salis. Accordingly, AEL's motion for partial summary judgment to enforce the Disclaimer against Salis limiting its potential liability to 50 dollars is granted.

D.   SUBJECT MATTER JURISDICTION

The Court "may examine subject matter jurisdiction, sua sponte, at any stage of the proceeding." Adams v. Suozzi, 433 F.3d 220, 224 (2d Cir. 2005) (citation and quotation marks omitted). The basis for subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 ("§ 1331") and § 1332. Under these statutes, a district court's subject matter jurisdiction may be exercised only when a federal question is presented or when the parties have complete diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000. See 28 U.S.C. §§ 1331, 1332; see also Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990) ("It is well established that for a case to come within [§ 1332] there must be complete diversity and that diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").

Here, according to Salis's Amended Complaint, complete diversity is lacking because Salis and one of the defendants,

24

Hoegh, are both citizens of New York. However, the Court has original jurisdiction over Salis's claim against Hoegh under COGSA pursuant to 28 U.S.C. § 1331. Because the Court has subject matter jurisdiction over the claim against Hoegh, the Court may exercise supplemental jurisdiction over Salis's state-law claim against AEL, pursuant to 28 U.S.C. § 1367(a) ("§ 1367").

Federal district courts have supplemental jurisdiction over state-law claims that are "so related" to the claims over which the court has original jurisdiction that they form part of the same "case or controversy under Article III of the United States Constitution." Id. at § 1367(a). A District court may "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." Id. at § 1367(c)(3). After a court's discretion to exercise supplemental jurisdiction is triggered under § 1367(c)(3), the court is to "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to extend jurisdiction." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the

25

remaining state-law claims." <u>Cohill</u>, 484 U.S. at 350 n.7; <u>see</u> <u>also</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well.").

Because the Court has granted Hoegh's motion for summary judgment dismissing Salis's claim against Hoegh under COGSA, and Salis's remaining state-law claim against AEL fails to meet the required amount in controversy for this Court to exercise original jurisdiction pursuant to § 1332, there is no longer a claim over which the Court has original jurisdiction. Original jurisdiction was eliminated upon the first motion of the parties, "prior to the investment of significant judicial resources." <u>Kolari</u>, 455 F.3d at 123. By permitting Salis to re-file the claim against AEL in state court, the claim "will be afforded a 'surer-footed reading of applicable law.'" <u>Id.</u> at 123-24 (<u>quoting</u> <u>Gibbs</u>, 383 U.S. at 726). Therefore, after considering the values of judicial economy, convenience, fairness, and comity, the Court dismisses Salis's claim against AEL without prejudice. <u>See</u> <u>In re Short Sale Antitrust</u> <u>Litig.</u>, 527 F. Supp. 2d 253, 261-62 (S.D.N.Y. 2007).

## III. **ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the motions (Docket Nos. 16 and 17) of defendants American Export Lines, Inc. and Hoegh Autoliners,

26

Inc. dated January 25, 2008 for summary judgment are GRANTED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           30 April 2008


                              VICTOR MARRERO
                                U.S.D.J.